IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JASON L. NOHR, Receiver for       )
MSC HOLDINGS USA, LLC,            )
MSC HOLDINGS, INC., and MSC       )
GA HOLDINGS, LLC,                 )
                                  )
          Plaintiff,              )
                                  )        CIVIL ACTION FILE
                                  )
v.                                )
                                  )        NO. _____
                                  )
CORINNA JANG, CHRIS LITSEY,       )
MARY JANE BENDER,                 )
PATRICK DUNCAN, CATHERINE         )
EVANGELOS, THINH TRAN,            )
HANH TRAN, ASHLEY TRAN,           )
MARY LOU HIRSCH, TANGIE           )
KING, DAVID MALLORY, TOMMY        )
MARTINEZ, ROSE MORANDINI,         )
SCOTT MURPHY, KAREN               )
MURPHY, CHRISTINE PERRY,          )
ELAINE PREWITT, ROBERT            )
ROHM, JAMES SHEFFIELD,            )
PATRICIA SHEFFIELD, JOEY          )
SHEFFIELD, LORI SHEFFIELD,        )
MELISSA THOMPSON, ZANE            )
WELLS, BETTY WELLS,               )
LYNNETTE ALLEN, DOSS BAKER,       )
JR., TERESA BAKER, GLENN          )
BENDER, ANNA BENDER, JEFF         )
BRODSKY, GAIL BRODSKY,            )
STEPHEN CARR, TONYA CARR,         )
QUANG ANH DINH, THANH             )
THUY HA, FRANK VOGEL,             )
TERESA VOGEL, JOE HARPER,         )
PAUL HARPER, JOAN HEINTZ,         )

MYHOA LY, BINH PHAM,                    )
GEOFFREY MAROTT, AMY                    )
MAROTT, BRUCE MARSHALL,                 )
BRYAN MOORE, REBECCA                    )
MOORE, ROGER MULLINS,                   )
CHERIE MULLINS, JENNIFER                )
MURPHY, ANTHONY PHAM,                   )
MARIA PHAM, NORMAN                      )
SCHNELLER, EVELINE                      )
SCHNELLER, MICHAEL                      )
STRICKLAND, KIMBERLY                    )
STRICKLAND, DAPHNE                      )
SWILLING, STEPHEN TABB,                 )
ANNIE TABB, DUB WALTERS,                )
REGENIA WALTERS, JOSEPH                 )
WATKINS, SHANDA WATKINS,                )
JAMES BRETT ALEXANDER,                  )
BARBARA BANFIC, VIRGINIA                )
BEASON, RUTH EUGENIA                    )
BRANDON, HOWARD DANIEL,                 )
NORMA DAY, BRENDA GATES,                )
SCOTT HIRSCH, MEI LING JANG,            )
CARLA KUIZON, BARBARA                   )
LINGENFELTER, CHARLOTTE                 )
MALLORY, ROSEMARY MURPHY,               )
MARY NEGRIS, BARBARA                    )
ROBBINS, JULIE STARCHER,                )
and JONATHAN TRAISTER,                  )
                                        )
            Defendants.                 )

## **COMPLAINT**

Jason L. Nohr, as the court-appointed Receiver for MSC Holdings USA,

LLC, MSC Holdings, Inc., and MSC GA Holdings, LLC ("Receiver") files this

Complaint against the above-named Defendants.

2

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff is a federally appointed receiver acting pursuant to the authority granted by this Court in its Orders of appointment, pursuant to Fed. R. Civ. P. 66 and 28 U.S.C. § 959.

2.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 754, 1692, and 1331.

3.     On November 19, 2012, the U.S. Securities and Exchange Commission ("SEC") filed an enforcement action in the United States District Court for the Northern District of Georgia (hereinafter "the Receivership Court" in the "Receivership District") styled as follows:  *SEC v. Billy Wayne McClintock, individually, and d/b/a MSC Holdings, Dianne Alexander a/k/a Linda Dianne Alexander* (hereinafter "the Receivership Defendants")*, MSC Holdings USA, LLC, MSC Holdings, Inc., MSC GA Holdings, LLC,* (hereinafter "the Receivership entities") Civil Action File No. 1:12-CV-04028-SCJ (hereinafter "the SEC's Complaint").

4.     On November 28 and 29, 2012, Receivership Defendants Alexander and McClintock consented to the entry of permanent injunctions against them, admitted that they operated a fraudulent Ponzi-type scheme, and settled the SEC's

allegations against them in the Receivership Court (except as to the amount of disgorgement, which is to be determined at a later date).

5.     On February 11, 2013, the Receivership Court entered its first Order of Appointment of Plaintiff as Receiver for the Receivership entities.

6.     Within ten (10) days of appointment, the Receiver filed Notices of Receivership (including the SEC Complaint and Order of Appointment) in the following districts:  Central District of California, Eastern District of California, Southern District of California, and Middle District of Florida.

7.     On June 9, 2014, the Receivership Court entered an Order of Reappointment of Plaintiff as Receiver for the Receivership entities.

8.     Within ten (10) days of reappointment, the Receiver filed Notices of Receivership (including the SEC Complaint and Order of Reappointment) in the following districts:  District of Arizona, District of Colorado, Northern District of Florida, Southern District of Florida, Southern District of Georgia, Eastern District of Kentucky, Eastern District of Michigan, Western District of Michigan, Southern District of Mississippi, District of Nebraska, District of New Mexico, Western District of North Carolina, Southern District of Ohio, District of Oregon, Eastern District of Pennsylvania, Eastern District of Tennessee, Middle District of Tennessee, Eastern District of Texas, and Eastern District of Virginia.

4

9.     Venue is proper in the Receivership Court, pursuant to 28 U.S.C. § 1391(b), as all Defendants conducted business with the Receivership entities and a substantial part of the events or omissions giving rise to these claims all occurred, and where a substantial part of the Receivership assets are located, are in the Receivership District.

10.     Jurisdiction and venue are also proper in the Receivership Court because Plaintiff filed Notices of the Receivership (that included the SEC's Complaint and Order of Appointment or Reappointment) in the various district courts in which all of the Defendants and their property are located within ten (10) days of the Order of Appointment or Reappointment, pursuant to 28 U.S.C. §§ 754 and 1692.  These statutes effectively expand the territorial jurisdiction of the Receivership Court to any district in the United States in which property and Defendants may be found and upon filing of Notices of Receivership.  *Haile v. Henderson Nat. Bank*, 657 F.2d 816, 822 (6th Cir. 1981).

11.     The Receivership Court's Orders of Appointment and Reappointment expressly conditioned Plaintiff's authority to pursue third party litigation upon approval by the Receivership Court (following an investigation by the Receiver and consultation with and approval of counsel for the SEC).

12.     On June 14, 2013, the Receiver filed his report with the Receivership Court regarding third party claims.  Therein, Plaintiff confirmed the results of his preliminary investigation indicating that many investors apparently received payments that exceeded their principal giving rise to "false profits" claims.  In addition, the documents reviewed indicated that investors were apparently paid "referral fees" for helping the Receivership Defendants promote, continue, and expand their illicit Ponzi scheme and for introducing new "investors" into the operation.

13.     On September 11, 2013, the Receivership Court entered an Order allowing Plaintiff to proceed with his investigation and pursue third party claims.

14.     The Receiver has standing to assert claims against third parties who received funds, caused damage, or who are in possession of assets belonging to the Receivership.  *See* 28 U.S.C. §§ 754 and 1692; *Scholes v. Lehmann,* 56 F.3d 750 (7th Circ. 1995); *Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008); *Perkins v. Haines*, 661 F.3d 623, 626-27 (11th Cir. 2011); *Wing v. Dockstader*, 482 F. App'x 361, 362-63 (10th Cir. 2012); *Warfield v. Byron*, 436 F.3d 551, 554–55 (5th Cir. 2006).

15.     The Receiver has standing to recover payments made by the Receivership entities to investors in excess of their principal investment, as such

payments were fictitious Ponzi-scheme profits (or "false profits") and are voidable fraudulent transfers and unjust enrichment.

16.     The Receiver has standing to recover payments by the Receivership entities to investors in the form of so-called "referral fees," as the Receivership Defendants made these payments solely to promote continue, and expand the size and participation of their illicit Ponzi scheme and constitute voidable fraudulent transfers and unjust enrichment.

17.     Defendants Corinna Jang and Chris Litsey are citizens of the State of New Mexico and may be served with process at their place of domicile at 5098 NDCBU, Taos, Taos County, New Mexico 87571.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

18.     Defendant Mary Jane Bender is a citizen of the State of Colorado and may be served with process at her place of domicile at 9072 Gale Boulevard, Unit 2, Thornton, Adams County, Colorado 90260.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

19.     Defendant Patrick Duncan is a citizen of the State of Florida and may be served with process at his place of domicile at 834 Journey Lane, The Villages,

Sumter County, Florida 32163.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

20.     Defendant Catherine Evangelos is a citizen of the State of Ohio and may be served with process at her place of domicile at 7682 Brams Hill Drive, Dayton, Montgomery County, Ohio 45459.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

21.     Defendants Thinh Tran, Hanh Tran and Ashley Tran are citizens of the State of Georgia and may be served with process at their place of domicile at 1525 Bramble Bush Way, Suwanee, Gwinnett County, Georgia 30024. Defendants Thinh Tran, Hanh Tran and Ashley Tran are residents in the Receivership District.

22.     Defendant Mary Lou Hirsch is a citizen of the State of Florida and may be served with process at her place of domicile at 710 South Bay Boulevard, Anna Maria, Manatee County, Florida 34216.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

23.     Defendant Tangie King is a citizen of the State of Michigan and may be served at her place of domicile at 7043 Cannon Place Drive, Rockford, Kent County, Michigan 49341.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

24.     Defendant David Mallory is a citizen of the State of Texas and may be served with process at his place of domicile 800 North Drew Street, Livingston, Polk County, Texas 77351.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

25.     Defendant Tommy Martinez is a citizen of the State of Florida and may be served with process at his place of domicile at 6031 S.W. 183 Way, Sunshine Ranches, Broward County, Florida 33331.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

26.     Defendant Rose Morandini is a citizen of the State of Michigan and may be served with process at her place of domicile at 8214 21 Mile Road, Shelby Township, Oceana County, Michigan 43817.   The Receiver filed a Notice of

9

Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

27.     Defendants Scott Murphy and Karen Murphy are citizens of the State of Georgia and may be served with process at their place of domicile at 97 Longwood Crossing, Dallas, Paulding County, Georgia 30132. Defendants Scott Murphy and Karen Murphy are residents in the Receivership District.

28.     Defendant Christine Perry is a citizen of the State of North Carolina and may be served with process at her place of domicile at 1374 Mountain View Road, Burnsville, Yancey County, North Carolina 28714.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

29.     Defendant Elaine Prewitt is a citizen of the State of Kentucky and may be served with process at her place of domicile at 5211 Highway 461, Somerset, Pulaski County, Kentucky 42503.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

30.     Defendant Robert Rohm is a citizen of the State of Georgia and may be served with process at his place of domicile at 1628 Wildwood Road, Marietta,

Cobb County, Georgia 30062.  Defendant Robert Rohm is a resident in the Receivership District.

31.     Defendants James Sheffield and Patricia Sheffield are citizens of the State of Georgia and may be served at their place of domicile at 115 Salem Ridge Drive, McDonough, Henry County, Georgia 30253.  Defendants James Sheffield and Patricia Sheffield are residents in the Receivership District.

32.     Defendants Joey Sheffield and Lori Sheffield are citizens of the State of Georgia and may be served at their place of domicile at 497 Grandiflora Drive, McDonough, Henry County, Georgia 30253.  Defendants Joey Sheffield and Lori Sheffield are residents in the Receivership District.

33.     Defendant Melissa Thompson is a citizen of the State of Oregon and may be served at her place of domicile at 3052 NE Stanton Avenue, Bend, Deschutes County, Oregon 97701.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

34.     Defendants Zane Wells and Betty Wells are citizens of the State of Florida and may be served with process at their place of domicile at 5700 Bayshore Road, Lot 604, Palmetto, Manatee County, Florida 34221.  The Receiver filed a

Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

35.    Defendant Lynnette Allen is a citizen of the State of Florida and may be served at her place of domicile at 11329 N.W. 14th Court, Pembroke Pines, Broward County, Florida 33026.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

36.    Defendants Doss Baker, Jr. and Teresa Baker are citizens of the State of Georgia and may be served at their place of domicile at 5990 Holland Drive, Cumming, Forsyth County, Georgia 30041.  Defendants Doss Baker, Jr. and Teresa Baker are residents in the Receivership District.

37.    Defendants Glenn Bender and Anna Bender are citizens of the State of Nebraska and may be served at their place of domicile at 71669 639 Avenue, Humboldt, Richardson County, Nebraska 68379.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

38.    Defendants Jeff Brodsky and Gail Brodsky are citizens of the State of Colorado and may be served at their place of domicile at 12434 South US Highway 285, Conifer, Jefferson County, Colorado 80433.  The Receiver filed a

Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

39.    Defendants Stephen Carr and Tonya Carr are citizens of the State of Tennessee and may be served at their place of domicile at 10997 Rials Branch Road, Bon Aqua, Hickman County, Tennessee 37025.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

40.    Defendants Quang Anh Dinh and Thanh Thuy Ha are citizens of the State of Georgia and may be served at their place of domicile at 185 Welford Trace, Alpharetta, Fulton County, Georgia 30004.  Defendants Quang Anh Dinh and Thanh Thuy Ha are residents in the Receivership District.

41.    Defendant Frank Vogel is a citizen of the State of California and may be served at his place of domicile at 45502 13th Street, Lancaster, Los Angeles County, California 93534.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

42.    Defendant Teresa Vogel is a citizen of the State of Georgia and may be served at her place of domicile at 2413 Caylor Hill Pointe, Kennesaw, Cobb

County, Georgia 30152.  Defendant Teresa Vogel is a resident in the Receivership District.

43.     Defendant Joe Harper is a citizen of the State of Mississippi and may be served at his place of domicile at 35 Ponderosa Drive, Lumberton, Lamar County, Mississippi 39455.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

44.     Defendant Paul Harper is a citizen of the State of Georgia and may be served at his place of domicile at 403 Skyview Lane, Canton, Cherokee County, Georgia 30114.  Defendant Paul Harper is a resident in the Receivership District.

45.     Defendant Joan Heintz is a citizen of the State of Florida and may be served at her place of domicile at 11480 SW 22 Court, Davie, Broward County, Florida 33325.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

46.     Defendants Myhoa Ly and Binh Pham are citizens of the State of Georgia and may be served at their place of domicile at 1855 Morgans Run Trail, Buford, Gwinnett County, Georgia 30519.  Defendants Myhoa Ly and Binh Pham are residents in the Receivership District.

47.     Defendants Geoffrey Marott and Amy Marott are citizens of the State of Georgia and may be served at their place of domicile at 125 Royal Burgess Way, McDonough, Henry County, Georgia 30253.  Defendants Geoffrey Marott and Amy Marott are residents in the Receivership District.

48.     Defendant Bruce Marshall is a citizen of the State of New Mexico and may be served at his place of domicile at Unit 5 Block 169 Lot A, Carson Estates, El Prado, Taos County, New Mexico 87529.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

49.     Defendants Bryan Moore and Rebecca Moore are citizens of the State of Florida and may be served at their place of domicile at 1520 Dads Road, Baker, Okaloosa County, Florida 32531.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

50.     Defendants Roger Mullins and Cherie Mullins are citizens of the State of Georgia and may be served at their place of domicile at 170 Hol-Mar Trail, McDonough, Henry County, Georgia 30253.  Defendants Roger Mullins and Cherie Mullins are residents in the Receivership District.

51.     Defendant Jennifer Murphy is a citizen of the State of Arizona and may be served at her place of domicile at 1349 E. Clearwater Lane, Gilbert, Maricopa County, Arizona 85234.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

52.     Defendants Anthony Pham and Maria Pham are citizens of the State of Georgia and may be served at their place of domicile at 6000 Gaineswood Drive, Roswell, Fulton County, Georgia 30076.  Defendants Anthony Pham and Maria Pham are residents in the Receivership District.

53.     Defendants Norman and Eveline Schneller are citizens of the State of Georgia and may be served with process at their place of domicile at 427 Salem Ridge Drive, McDonough, Henry County, Georgia 30251.  Defendants Norman and Eveline Schneller are residents in the Receivership District.

54.     Defendants Michael Strickland and Kimberly Strickland are citizens of the State of Georgia and may be served at their place of domicile at 462 Windsor Drive, Marietta, Cobb County, Georgia 30064.  Defendants Michael Strickland and Kimberly Strickland are residents in the Receivership District.

55.     Defendant Daphne Swilling is a citizen of the State of Tennessee and may be served at her place of domicile at 3612 Maiden Drive, Chattanooga,

16

Hamilton County, Tennessee 37412.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

56.     Defendants Stephen Tabb and Annie Tabb are citizens of the State of Colorado and may be served at their place of domicile at 6891 S. Vincennes Way, Centennial, Arapahoe County, Colorado 80112.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

57.     Defendants Dub Walters and Regenia Walters are citizens of the State of Georgia and may be served at their place of domicile at 209 Teasley Trail, Moreland, Coweta County, Georgia 30259.  Defendants Dub Walter and Regenia Walters are residents in the Receivership District.

58.     Defendants Joseph Watkins and Shanda Watkins are citizens of the State of Georgia and may be served at their place of domicile at 40 Allie Drive, McDonough, Henry County, Georgia 30252.  Defendants Joseph Watkins and Shanda Watkins are residents in the Receivership District.

59.     Defendant James Brett Alexander is a citizen of the State of Georgia and may be served with process at his place of domicile at 2697 Middlecreek Way,

17

Cumming, Forsyth County, Georgia 30041.  Defendant James Brett Alexander is a resident in the Receivership District.

60.     Defendant Barbara Banfic is a citizen of the State of Michigan and may be served at her place of domicile at 11464 Birch Court, Washington Township, Macomb County, Michigan 48094.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

61.     Defendant Virginia Beason is a citizen of the State of Texas and may be served at her place of domicile at 16778 Lakeway Circle, Flint, Smith County, Texas 75762.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

62.     Defendant Ruth Eugenia Brandon is a citizen of the State of Texas and may be served at her place of domicile at 618 West Mill Street, Livingston, Polk County, Texas 77351.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

63.     Defendant Howard Daniel is a citizen of the State of Texas and may be served at his place of domicile at 160 Bishop Street, Livingston, Polk County,

Texas 77351.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

64.     Defendant Norma Day is a citizen of the State of Georgia and may be served at her place of domicile at 3100 Club Drive, Lawrenceville, Gwinnett County, Georgia 30044.  Defendant Norma Day is a resident in the Receivership District.

65.     Defendant Brenda Gates is a citizen of the State of Texas and may be served at her place of domicile at 4792 Highway 190 East, Livingston, Polk County, Texas 77351.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

66.     Defendant Scott Hirsch is a citizen of the State of Florida and may be served at his place of domicile at 2302 Derbyshire Avenue, Lakeland, Polk County, Florida 33803.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

67.     Defendant Mei Ling Jang is a citizen of the State of California and may be served at her place of domicile at 16 Blakely, Irvine, Orange County, California 92620.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

68.     Defendant Carla Kuizon is a citizen of the State of Florida and may be served at her place of domicile at 302 58th Street, Holmes Beach, Manatee County, Florida 34217.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

69.     Defendant Barbara Lingenfelter is a citizen of the State of Florida and may be served at her place of domicile at 300 Chipeway Avenue, Daytona Beach, Volusia County, Florida 32118.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

70.     Defendant Charlotte Mallory is a citizen of the State of Texas and may be served with process at her place of domicile at 800 North Drew Street, Livingston, Polk County, Texas 77351.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

71.     Defendant Rosemary Murphy is a citizen of the State of Florida and may be served with process at her place of domicile at 6354 Scorpio Avenue, North Port, Sarasota County, Florida 34287.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

72.     Defendant Mary Negris is a citizen of the State of Florida and may be served with process served with process at her place of domicile at 5400 34th Street West, Apartment 9E, Bradenton, Manatee County, Florida 34210.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

73.     Defendant Barbara Robbins is a citizen of the State of Texas and may be served with process at her place of domicile at 1040 FM 2457, Livingston, Polk County, Texas 77351.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

74.     Defendant Julie Starcher is a citizen of the State of Georgia and may be served with process at her place of domicile at 143 Ashley Drive, McDonough, Henry County, Georgia 30253.  Defendant Julie Starcher is a resident in the Receivership District.

75.     Defendant Jonathan Traister is a citizen of the State of New Mexico and may be served with process at his place of domicile at 988 Chicoma Vista, Santa Fe, Santa Fe County, New Mexico 87507.  The Receiver filed a Notice of Receivership in this district within ten (10) days of appointment or reappointment pursuant to 28 U.S.C. § 754.

76.   Plaintiff requests that the Defendants waive the unnecessary costs of service of the Summons and Complaint, and will seek to impose the costs of service upon any Defendant who refuses, pursuant to Fed. R. Civ. P. 4(d).

## FACTS

## Background

77.   The allegations set out above in paragraphs 1 through 76 are incorporated by reference as if set out fully herein.

78.   The Receivership Defendants, individually and doing business as the MSC Holdings entities, were operating a type of Ponzi scheme known as a "prime bank fraud" from 2002 to the present using the Receivership entities.

79.   McClintock and Alexander controlled the MSC Holdings entities solely for the illegitimate and fraudulent purpose and enterprise of operating a Ponzi-type scheme.

80.   The Receivership Defendants raised over $15 million from over 200 investors in more than 20 states, including Georgia, by telling investors that their money would be placed with a clandestine overseas entity that McClintock and Alexander referred to only as "the Trust." McClintock and Alexander misrepresented that the Trust would generate a return of at least 38 percent.

81.     The Receivership entities involved in the Ponzi scheme conducted no legitimate business or enterprise.  Instead, the Receivership Defendants merely used investor funds to make "interest" and "referral fee" payments in order to continue and expand the scheme.

82.     The Receivership Defendants comingled investor deposits into bank accounts from which "referral fee" and "interest" payments were made.

83.     The MSC Holdings entities were insolvent from their inception and at the times it made "referral fee" and "false profit" payments to the Defendants.

84.     The payments to the Defendants were made with the intent to hinder, delay, and defraud creditors, including other investors.

85.     On November 28 and 29, 2012, Receivership Defendants Alexander and McClintock consented to the entry of permanent injunctions against them, admitted that they operated a fraudulent Ponzi-type scheme, and settled the SEC's allegations against them in the Receivership Court (except as to the amount of disgorgement, which is to be determined at a later date).

86.     Based upon the Receivership Defendants' admissions, and the facts establishing the Receivership Defendants' operation of a fraudulent and insolvent Ponzi scheme in the SEC action, the well-established "Ponzi Scheme Presumption" applies and proof of actual fraud presumed to exist in the fraudulent transfer and

recovery actions filed in the Receivership Court. *See Wiand v. Lee,* 753 F.3d 1194, 1201-1202 (11th Cir. 2014); *Perkins v. Haines,* 66 F.3d 623, 626-628 (11th Cir. 2011); *Quilling v. Schonsky*, 247 F. App'x 583, 586 (5th Cir. 2007).  The "Ponzi scheme presumption" provides that, in a Ponzi-type scheme, "[t]here is a presumption of actual intent to defraud because 'transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors.'" *Picard v. Madoff*, 458 B.R. 87, 104 (Bankr. S.D.N.Y. 2011); *Wiand,* 753 F.3d at 1201.

87.    Over 150 investors were victimized by the MSC Holdings Ponzi scheme.

88.    The Receiver seeks to provide equity to these victims.

89.    The receiver seeks to achieve an equitable distribution among all defrauded investors.

90.    While the majority of investors lost most or all of the amounts they "invested" in the Receivership Defendants' Ponzi scheme, certain Defendants received "interest" payments in excess of the principal amount they "invested." The fictitious or "false profit" payments some investors received in excess of the principal amount they "invested" represent nothing more than inequitable and fraudulent transfer of money paid by other investors to a select few.

24

91.    Payments of "referral fees" and "false profits" to Defendants were made pursuant to a Ponzi scheme, after the Receivership entities incurred obligations to creditors, and while the MSC Holdings entities were insolvent.

92.    These payments of "referral fees" and "false profits" were made to further the Receivership Defendants' fraudulent Ponzi scheme and injured the Receivership entities by dissipating its assets.

93.    The payments and transfers to Defendants in the form of "referral fees" and "false profits" are voidable fraudulent transfers and unjust enrichment to the Defendants.

94.    It is inequitable and unjust for the Defendants to be enriched and profit through the Receivership Defendants' Ponzi scheme when so many investors have lost most or all of their principal "investment," which in many instances represents their life savings.

95.    Plaintiff seeks to equitably distribute the recovery of these inequitable payments of "false profits" and "referral fees" to losing investors.

96.    The Defendants do not have a legitimate claim to their receipt of misappropriated funds in the form of either "false profits" and/or "referral fees."

97.    Plaintiff seeks disgorgement of all such false profits and/or referral fees paid to the Defendants.

98.    Defendants who wrongfully received payments in excess of the principal amount they "invested" must return these fictitious and "false profits" to the Receivership Estate as unjust enrichment from these fraudulent transfers and ill-gotten gains.

99.    Transfers to the Defendants from the Receivership Defendants for amounts over and above their principal – i.e., "false profits" – are not made for value and are presumed fraudulent, as they were made pursuant to and in furtherance of a Ponzi scheme.

100.   Those Defendants who received "referral fees" or commissions from the Receivership Defendants as an incentive and reward for promoting, expanding, and enlarging the Ponzi scheme.  In exchange for such "referral fees," certain Defendants assisted in the scheme's fraudulent purpose, helped it increase in size, and brought in a greater number of innocent investors.

101.   In exchange for the payment of these "referral fees," the Defendants described their positive personal experiences with the Receivership Defendants' Ponzi scheme and brought in new participants to the operation, thereby increasing the money Defendants would receive in the form of both "referral fees" and/or "false profits."

102.   The "referral fee" payments to the Defendants were not for anything of equivalent value, were made with the actual intent of defrauding creditors, and represent nothing more than the redirected funds obtained by the Receivership Defendants from new participants in their Ponzi scheme.

103.   The "referral fee" or commission payments represent an inequitable redistribution of investor funds to those who helped expand and extend the Receivership Defendants' Ponzi scheme by securing contributions from new investors.

104.   On September 11, 2013, the Receivership Court authorized the Receiver to proceed with his investigation and third party recovery actions involving investors who received "false profits" and "referral fees".

105.   Defendants must disgorge and repay all "referral fees" or commissions they received for bringing new investors into the Receivership Defendants' Ponzi scheme separate and apart from any fictitious or "false profits" they may have received over their principal "investment" and irrespective of whether they received a return of their principal "investment."  *See Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006); *Wing v. Layton*, 957 F.Supp.2d 1307 (D. Utah 2013); *Wing v. Holder*, 2010 WL 5021087 (D. Utah Dec. 3, 2010); *Hays v. Adam*, 512 F.Supp.2d. 1330, 1343 (N.D. Ga. 2007).

27

106.    Payments the Defendants received in the form of fictitious or "false profits" and/or "referral fees" were the fraudulent and inequitable redistribution of investor funds and served only to advance, continue, and expand the Receivership Defendants' fraudulent scheme.  Accordingly, all such payments to the Defendants must be disgorged and returned to the Receivership Estate so Plaintiff may equitably distribute them to those who suffered losses.

107.    Joinder of all the Defendants in this single action is authorized and appropriate under Fed. R. Civ. P. 20(a)(2), as the right to relief against each Defendant arises out of the same series of transactions or occurrences and there are questions of law and fact common to all Defendants that will arise in this action.

## DEMAND AMOUNTS

108.    The allegations set out above in paragraphs 1 through 107 are incorporated by reference as if set out fully herein.

### DEFENDANTS CORINNA JANG AND CHRIS LITSEY

109.    Defendants Corinna Jang and Chris Litsey received $105,968 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount they "invested").

110.   Defendants Corinna Jang and Chris Litsey also received $176,906 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

111.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

112.   The Receiver demands that Defendants Corinna Jang and Chris Litsey return $105,968 in "false profits" and $176,906 in "referral fees" – totaling $282,874.

113.   Equity requires that they do so.

114.   The Receiver will use those funds to make an equitable distribution to all investors.

### DEFENDANT MARY JANE BENDER

115.   Defendant Mary Jane Bender received $1,700 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she invested").

116.   Defendant Mary Jane Bender also received $204,471 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

117.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

118.   The Receiver demands that Defendant Mary Jane Bender return $1,700 in "false profits" and $204,471 in "referral fees" – totaling $206,171.

119.   Equity requires that she do so.

120.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT PATRICK DUNCAN

121.   Defendant Patrick Duncan received $9,091 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount he "invested").

122.   Defendant Duncan also received $9,000 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

123.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

30

124.   The Receiver demands that Defendant Duncan return $9,091 in "false profits" and $9,000 in "referral fees" – totaling $18,091.

125.   Equity requires that he do so.

126.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT CATHERINE EVANGELOS

127.   Defendant Catherine Evangelos received $30,000 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

128.   Defendant Evangelos also received $7,233 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

129.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

130.   The Receiver demands that Defendant Evangelos return $30,000 in "false profits" and $7,233 in "referral fees" – totaling $37,233.

131.   Equity requires that she do so.

132.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS THINH TRAN, HANH TRAN, AND ASHLEY TRAN

133.   Defendants Thinh Tran, Hanh Tran, and Ashley Tran received $198,752 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount they "invested").

134.   Defendants Thinh Tran, Hanh Tran, and Ashley Tran also received $142,751 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

135.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

136.   The Receiver demands that Defendants Thinh Tran, Hanh Tran, Ashley Tran return $198,752 in "false profits" and $142,751 in "referral fees" – totaling $341,503.

137.   Equity requires that they do so.

138.   The Receiver will use those funds to make an equitable distribution to all investors.

32

## DEFENDANT MARY LOU HIRSCH

139.   Defendant Mary Lou Hirsch received $63,831 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

140.   Defendant Mary Lou Hirsch also received $2,500 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

141.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

142.   The Receiver demands that Defendant Mary Lou Hirsch return $63,831 in "false profits" and $2,500 in "referral fees" – totaling $66,331.

143.   Equity requires that she do so.

144.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT TANGIE KING

145.   Defendant Tangie King received $4,770 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

33

146.   Defendant Tangie King also received $128,415 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

147.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

148.   The Receiver demands that Defendant King return $4,770 in "false profit" and $128,415 in "referral fees" – totaling $133,185.

149.   Equity requires that she do so.

150.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT DAVID MALLORY

151.   Defendant David Mallory received $244,479 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount he "invested").

152.   Defendant David Mallory also received $106,247 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

153.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

154.   The Receiver demands that Defendant David Mallory return $244,479 in "false profits" and $106,247 in "referral fees" – totaling $350,726.

155.   Equity requires that he do so.

156.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT TOMMY MARTINEZ

157.   Defendant Tommy Martinez received $94,740 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount he "invested").

158.   Defendant Martinez also received $5,787 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

159.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

160.   The Receiver demands that Defendant Martinez return $94,740 in "false profits" and $5,787 in "referral fees" – totaling $100,527.

161.   Equity requires that he do so.

162.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT ROSE MORANDINI

163.   Defendant Rose Morandini received $5,000 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

164.   Defendant Morandini also received $182,233 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

165.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

166.   The Receiver demands that Defendant Morandini return $5,000 in "false profits" and $182,233 in "referral fees" - totaling $187,233.

167.   Equity requires that she do so.

36

168.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS SCOTT MURPHY AND KAREN MURPHY

169.   Defendants Scott and Karen Murphy received $34,131 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount they "invested").

170.   Defendants Scott and Karen Murphy also received $61,430 in "referral fees" from the Receivership Defendants as payments for expanding the Ponzi scheme by securing additional funds from new investors.

171.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

172.   The Receiver demands that Defendants Scott and Karen Murphy return $34,131 in "false profits" and $61,430 in "referral fees" – totaling $95,561.

173.   Equity requires that they do so.

174.   The Receiver will use those funds to make an equitable distribution to all investors.

**DEFENDANT CHRISTINE PERRY**

175.   Defendant Christine Perry received $66,226 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal she "invested").

176.   Defendant Perry also received $17,868 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

177.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

178.   The Receiver demands that Defendant Perry return $66,226 in "false profits" and $17,868 in "referral fees" – totaling $84,094.

179.   Equity requires that she do so.

180.   The Receiver will use those funds to make an equitable distribution to all investors.

**DEFENDANT ELAINE PREWITT**

181.   Defendant Elaine Prewitt received $46,407 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal she "invested").

182.   Defendant Prewitt also received $56,751 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

183.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

184.   The Receiver demands that Defendant Prewitt return $46,407 in "false profits" and $56,751 in "referral fees" – totaling $103,158.

185.   Equity requires that she do so.

186.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT ROBERT ROHM

187.   Defendant Robert Rohm received $31,088 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal he "invested").

188.   Defendant Rohm also received $172,078 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional fund from new investors.

189.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

190.   The Receiver demands that Defendant Rohm return $31,088 in "false profits" and $172,078 in "referral fees" – totaling $203,166.

191.   Equity requires that he do so.

192.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS JAMES SHEFFIELD AND PATRICIA SHEFFIELD

193.   Defendants James and Patricia Sheffield received $82,906 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal they "invested").

194.   Defendants James and Patricia Sheffield also received $197,853 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

195.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

196.   The Receiver demands that Defendants James and Patricia Sheffield return $82,906 in "false profits" and $197,853 in "referral fees" -- totaling $280,759.

197.   Equity requires that they do so.

198.   The Receiver will use those funds to make an equitable distribution to all investors.

### DEFENDANTS JOEY SHEFFIELD AND LORI SHEFFIELD

199.   Defendants Joey and Lori Sheffield received $26,522 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal they "invested").

200.   Defendants Joey and Lori Sheffield also received $93,640 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

201.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

202.   The Receiver demands that Defendants Joey and Lori Sheffield return $26,522 in "false profits" and $93,6401 in "referral fees" – totaling $120,162.

203.   Equity requires that they do so.

204.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT MELISSA THOMPSON

205.   Defendant Melissa Thompson received $7,323 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

206.   Defendant Thompson also received $5,000 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

207.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

208.   The Receiver demands that Defendant Thompson return $7,323 in "false profits" and $5,000 in "referral fees" – totaling $12,323.

209.   Equity requires that she do so.

210.   The Receiver will use those funds to make an equitable distribution to all investors.

42

## DEFENDANTS ZANE WELLS AND BETTY WELLS

211.   Defendants Zane and Betty Wells received $198,373 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal they "invested").

212.   Defendants Zane and Betty Wells also received $32,844 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

213.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

214.   The Receiver demands that Defendants Zane and Betty Wells return $198,373 in "false profits" and $32,844 in "referral fees" – totaling $231,217.

215.   Equity requires that they do so.

216.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT LYNNETTE ALLEN

217.   Defendant Lynnette Allen received $2,500 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

43

218.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

219.   The Receiver demands that Defendant Allen return $2,500 in "referral fees".

220.   Equity requires that she do so.

221.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS DOSS BAKER, JR. AND TERESA BAKER

222.   Defendants Doss and Teresa Baker received $25,336 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

223.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

224.   The Receiver demands that Defendants Doss and Teresa Baker return $25,336 in "referral fees".

225.   Equity requires that they do so.

226.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS GLENN BENDER AND ANNA BENDER

227.   Defendants Glenn and Anna Bender received $5,000 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

228.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

229.   The Receiver demands that Defendants Glenn and Anna Bender return $5,000 in "referral fees".

230.   Equity requires that they do so.

231.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS JEFF BRODSKY AND GAIL BRODSKY

232.   Defendants Jeff and Gail Brodsky received $7,876 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

233.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

234.   The Receiver demands that Defendants Jeff and Gail Brodsky return $7,876 in "referral fees".

235.   Equity requires that they do so.

236.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS STEPHEN CARR AND TONYA CARR

237.   Defendants Stephen and Tonya Carr received $43,415 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

238.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

239.   The Receiver demands that Defendants Stephen and Tonya Carr return $43,415 in "referral fees".

240.   Equity requires that they do so.

241.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS QUANG ANH DINH AND THANH THUY HA

242.   Defendants Quang Anh Dinh and Thanh Thuy Ha received $10,000 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

243.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

244.   The Receiver demands that Defendants Quang Anh Dinh and Thanh Thuy Ha return $10,000 in "referral fees".

245.   Equity requires that they do so.

246.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS FRANK VOGEL AND TERESA VOGEL

247.   Defendants Frank and Teresa Vogel received $278,678 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

248.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

249.   The Receiver demands that Defendants Frank and Teresa Vogel return $278,678 in "referral fees".

250.   Equity requires that they do so.

251.   The Receiver will use those funds to make an equitable distribution to all investors.

### DEFENDANT JOE HARPER

252.   Defendant Joe Harper received $65,845 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

253.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

254.   The Receiver demands that Defendant Joe Harper return $65,845 in "referral fees".

255.   Equity requires that he do so.

256.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT PAUL HARPER

257.   Defendant Paul Harper received $72,672 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

258.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

259.   The Receiver demands that Defendant Paul Harper return $72,672 in "referral fees".

260.   Equity requires that he do so.

261.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT JOAN HEINTZ

262.   Defendant Joan Heintz received $2,500 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

263.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

264.   The Receiver demands that Defendant Heintz return $2,500 in "referral fees".

265.   Equity requires that she do so.

266.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS MYHOA LY AND BINH PHAM

267.   Defendants Myhoa Ly and Binh Pham received $30,898 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

268.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

269.   The Receiver demands that Defendants Myhoa Ly and Binh Pham return $30,898 in "referral fees".

270.   Equity requires that they do so.

271.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS GEOFFREY MAROTT AND AMY MAROTT

272.   Defendants Geoffrey and Amy Marott received $15,500 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investor.

273.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

274.   The Receiver demands that Defendants Geoffrey and Amy Marott return $15,500 in "referral fees".

275.   Equity requires that they do so.

276.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT BRUCE MARSHALL

277.   Defendant Bruce Marshall received $99,199 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

278.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

279.   The Receiver demands that Defendant Marshall return $99,199 in "referral fees".

280.   Equity requires that he do so.

281.   The Receiver will use those funds to make an equitable distribution to all investors.

### DEFENDANTS BRYAN MOORE AND REBECCA MOORE

282.   Defendants Bryan and Rebecca Moore received $11,648 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

283.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

284.   The Receiver demands that Defendants Bryan and Rebecca Moore return $11,648 in "referral fees".

285.   Equity requires that they do so.

286.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS ROGER MULLINS AND CHERIE MULLINS

287.   Defendants Roger and Cherie Mullins received $21,500 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

288.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

289.   The Receiver demands that Defendants Roger and Cherie Mullins return $21,500 in "referral fees".

290.   Equity requires that they do so.

291.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT JENNIFER MURPHY

292.   Defendant Jennifer Murphy received $7,500 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

293.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

294.   The Receiver demands that Defendant Jennifer Murphy return $7,500 in "referral fees".

295.   Equity requires that she do so.

296.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS ANTHONY PHAM AND MARIA PHAM

297.   Defendants Anthony and Maria Pham received $5,000 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

298.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

299.   The Receiver demands that Defendants Anthony and Maria Pham return $5,000 in "referral fees".

300.   Equity requires that they do so.

301.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS NORMAN SCHNELLER AND EVELINE SCHNELLER

302.   Defendants Norman and Eveline Schneller received $48,909 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

303.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

304.   The Receiver demands that Defendants Norman and Eveline Schneller return $48,909 in "referral fees".

305.   Equity requires that they do so.

306.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS MICHAEL STRICKLAND AND KIMBERLY STRICKLAND

307.   Defendants Michael and Kimberly Strickland received $6,502 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

308.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

309.   The Receiver demands that Defendants Michael and Kimberly Strickland return $6,502 in "referral fees".

310.   Equity requires that they do so.

311.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT DAPHNE SWILLING

312.   Defendant Daphne Swilling received $4,665 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

313.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

314.   The Receiver demands that Defendant Swilling return $4,665 in "referral fees".

315.   Equity requires that she do so.

316.    The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS STEPHEN TABB AND ANNIE TABB

317.    Defendants Stephen and Annie Tabb received $2,500 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

318.    The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

319.    The Receiver demands that Defendants Stephen and Annie Tabb return $2,500 in "referral fees".

320.    Equity requires that they do so.

321.    The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS DUB WALTERS AND REGENIA WALTERS

322.    Defendants Dub and Regenia Walters received $2,500 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

323.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

324.   The Receiver demands that Defendants Dub and Regenia Walters return $2,500 in "referral fees".

325.   Equity requires that they do so.

326.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANTS JOSEPH WATKINS AND SHANDA WATKINS

327.   Defendants Joseph and Shanda Watkins received $12,500 in "referral fees" from the Receivership Defendants as payment for expanding the Ponzi scheme by securing additional funds from new investors.

328.   The dates and amounts of the payments the Defendants made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

329.   The Receiver demands that Defendants Joseph and Shanda Watkins return $12,500 in "referral fees".

330.   Equity requires that they do so.

331.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT JAMES BRETT ALEXANDER

332.   Defendant James Brett Alexander received $74,003 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount he "invested").

333.   The dates and amounts of the payments the Defendant received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

334.   The Receiver demands that Defendant James Brett Alexander return $74,003 in "false profits".

335.   Equity requires that he do so.

336.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT BARBARA BANFIC

337.   Defendant Barbara Banfic received $10,869 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

338.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

339.   The Receiver demands that Defendant Banfic return $10,869 in "false profits".

340.   Equity requires that she do so.

341.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT VIRGINIA BEASON

342.   Defendant Virginia Beason received $63,851 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

343.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

344.   The Receiver demands that Defendant Beason return $63,851 in "false profits".

345.   Equity requires that she do so.

346.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT RUTH EUGENIA BRANDON

347.   Defendant Ruth Eugenia Brandon received $24,974 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

348.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

349.   The Receiver demands that Defendant Brandon return $24,974 in "false profits".

350.   Equity requires that she do so.

351.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT HOWARD DANIEL

352.   Defendant Howard Daniel received $88,959 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount he "invested").

353.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

354.   The Receiver demands that Defendant Daniel return $88,959 in "false profits".

355.   Equity requires that he do so.

356.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT NORMA DAY

357.   Defendant Norma Day received $111,564 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

358.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

359.   The Receiver demands that Defendant Day return $111,564 in "false profits".

360.   Equity requires that she do so.

361.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT BRENDA GATES

362.   Defendant Brenda Gates received $4,161 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

363.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

364.   The Receiver demands that Defendant Gates return $4,161 in "false profits".

365.   Equity requires that she do so.

366.   The Receiver will use those funds to make an equitable distribution to all

## DEFENDANT SCOTT HIRSCH

367.   Defendant Scott Hirsch received $46,957 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount he "invested").

368.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

369.   The Receiver demands that Defendant Scott Hirsch return $46,957 in "false profits".

370.   Equity requires that he do so.

371.   The Receiver will use those funds to make an equitable distribution to all investors.

**DEFENDANT MEI LING JANG**

372.   Defendant Mei Ling Jang received $30,547 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

373.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

374.   The Receiver demands that Defendant Jang return $30,547 in "false profits".

375.   Equity requires that she do so.

376.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT CARLA KUIZON

377.   Defendant Carla Kuizon received $143,867 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

378.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

379.   The Receiver demands that Defendant Kuizon return $143,867 in "false profits".

380.   Equity requires that she do so.

381.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT BARBARA LINGENFELTER

382.   Defendant Barbara Lingenfelter received $544,954 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

383.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

384.   The Receiver demands that Defendant Lingenfelter return $544,954 in "false profits".

385.   Equity requires that she do so.

386.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT CHARLOTTE MALLORY

387.   Defendant Charlotte Mallory received $25,114 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

388.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

389.   The Receiver demands that Defendant Charlotte Mallory return $25,114 in "false profits".

390.   Equity requires that she do so.

391.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT ROSEMARY MURPHY

392.   Defendant Rosemary Murphy received $40,250 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

393.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

394.   The Receiver demands that Defendant Rosemary Murphy return $40,250 in "false profits".

395.   Equity requires that she do so.

396.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT MARY NEGRIS

397.   Defendant Mary Negris received $13,000 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

398.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

399.   The Receiver demands that Defendant Negris return $13,000 in "false profits".

400.   Equity requires that she do so.

401.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT BARBARA ROBBINS

402.   Defendant Barbara Robbins received $26,598 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

403.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

404.   The Receiver demands that Defendant Robbins return $26,598 in "false profits".

405.   Equity requires that she do so.

406.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT JULIE STARCHER

407.   Defendant Julie Starcher received $24,907 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount she "invested").

408.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

409.   The Receiver demands that Defendant Starcher return $24,907 in "false profits".

410.   Equity requires that she do so.

411.   The Receiver will use those funds to make an equitable distribution to all investors.

## DEFENDANT JONATHAN TRAISTER

412.   Defendant Jonathan Traister received $125,679 in "false profit" payments from the Receivership Defendants (i.e., over the return of the principal amount he "invested").

413.   The dates and amounts of the payments the Defendant made to and received from the Receivership Defendants and entities are described in "Exhibit A" (attached).

414.   The Receiver demands that Defendant Traister return $125,679 in "false profits".

415.   Equity requires that he do so.

416.   The Receiver will use those funds to make an equitable distribution to all investors.

## COUNT I

## Fraudulent Transfers

## Violations of O.C.G.A. § 18-2-74 of the Uniform Fraudulent Transfers Act

417.   The allegations set forth in paragraph 1 through 416 above are incorporated into this Count as if fully set forth herein.

418.   Transfers to the Defendants by the Receivership entities and Receivership Defendants were made in furtherance of the Ponzi scheme, not for value, and with the intent to hinder, delay, and defraud creditors, pursuant to O.C.G.A. § 18-2-74(a)(1).

419.   Payments made to Defendants by MSC Holdings were fraudulent transfers of funds made in furtherance of the Ponzi scheme and actual intent to defraud is presumed.

420.   The MSC Holdings entities were insolvent from their inception and the transfers to the Defendants occurred after its obligations were incurred.

421.   The MSC Holdings entities made payments to Defendants when they were insolvent.  By making these payments, the MSC Holdings entities either intended to incur, or reasonably should have known that it would incur, debts beyond its ability to pay the debts as they became due, in violation of O.C.G.A. § 18-2-74(a)(2).

422.   The "false profit" and "referral fee" payments to Defendants are fraudulent transfers that must be returned to the Receivership Estate.

423.   As a direct and proximate result of payments made to Defendants, the Receivership entities suffered damages and have been rendered liable to investors, creditors, and other third parties.

424.   Plaintiff is entitled to an award of prejudgment interest based upon the amounts demanded and owed, pursuant to O.C.G.A. § 51-12.4.

## COUNT II

## Unjust Enrichment

425.   The allegations set forth in paragraph 1 through 424 above are incorporated into this Count as if fully set forth herein.

426.   Defendants received and accepted a benefit as a result of the wrongful payments made to them.

427.   The payments Defendants received came from the investments of other investors and not the Defendants' principal investments.

428.   The payments Defendants received as referral fees came from the investments of other investors and not MSC Holdings.

429.   Defendants should not be allowed to benefit from these fraudulent payments merely because they, themselves, were not to blame for the fraud.

430.   Defendants do not have a legitimate claim to the funds they received.

431.   Given the facts alleged above, it is unjust for Defendants to retain all of the pre-receivership money paid to them by MSC Holdings.

432.   Defendants should not receive a disproportionate share of the recovered investor funds.

433.   These wrongful payments directly and proximally injured the Receivership entities.

434.   As a direct and proximate result of payments kept by Defendants the Receivership entities suffered damages and have been rendered liable to investors, creditors and other third parties.

435.   Plaintiff is entitled to an award of prejudgment interest based upon the amounts demanded and owed, pursuant to O.C.G.A. § 51-12.4.

## PRAYER FOR RELIEF

WHEREFORE, Jason L. Nohr, Receiver, requests and demands an entry of judgment in his favor:

1.   That summons issue requiring Defendants to appear as provided by law to answer Plaintiff's Complaint;

2.   That the Court award and enter judgment in favor of Plaintiff against the Defendants;

3.   On Count I, that Plaintiff recover demand amounts from Defendants plus prejudgment interest;

4.   On Count II, that Plaintiff recover demand amounts from Defendants plus prejudgment interest;

5.   That all costs be taxed against the Defendants; and

6.   Such other and further relief as the Court shall deem just and proper.

Respectfully submitted, this 26th day of August, 2014.

**CAUTHORN NOHR & OWEN**

  /s  Jason L. Nohr
Georgia Bar No. 545435
Receiver

212 Church Street
Marietta, Georgia  30060
770.528.0150
770.528.0160 – facsimile
jln@cauthornnohr.com

**74**