ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 2 4 2014

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**Plaintiff**

**JASON L. NOHR, Receiver for**
**MSC HOLDINGS USA, LLC,**
**MSC HOLDINGS, INC., and MSC**
**HOLDINGS, LLC**

**CASE# 1:14-cv-02761-SCJ**

**Defendants**

**NORMA DAY, PRO SE, et al**

**Jury Trial Requested**
**On Any Issue of Fact**

---

### DEFENDANT NORMA DAY'S MOTION TO DISMISS

Comes now, Defendant Norma Day ("Defendant Day") and files this, her Motion to Dismiss Plaintiff's Complaint against her, ie. both of the two Counts in the Complaint, pursuant to Federal Rules of Civil Procedure ("FRCP") 12(a)(4), which allows for a Motion to Dismiss to precede any Answer to the Complaint by Defendant Day.

The two Counts against Defendant Day are Count 1 for Fraudulent Transfer and Count 2 for Unjust Enrichment, and Defendant Day is hereby claiming that the Complaint fails to state a claim against her for which relief my be granted by the

Court on BOTH counts, pursuant to FRCP 12(b)(6), which provides that such defenses may be asserted by motion, ie., this Motion to Dismiss.

Defendant Day is attaching her Brief in Support of this Motion to Dismiss, which contains her Memorandum of Law and Argument, to this subject Motion to Dismiss and hereby incorporates the same within and requests that the Court, after reviewing all presented by Defendant Day, grant this "Motion to Dismiss: and dismiss both Counts and thus, the Complaint in its entirely, that was brought against her by Receiver Nohr, with prejudice.

Respectfully Submitted This 24th Day of October, 2014

Norma Day

Room 212

2899 Five Forks Trickum Rd.

Lawrenceville, Ga. 30044

## BRIEF IN SUPPORT OF DEFENDANT DAY'S MOTION TO DISMISS

### BACKGROUND

The subject Lawsuit was filed against Defendant Day and numerous others by Receiver Nohr on behalf of the MSC entities listed in the case caption above, on August 26, 2014.  Receiver Nohr sent a Notice of Lawsuit and Request to Waive Service to Defendant Day on August 29, 2014 and Defendant Day, in order to comply with Federal Rules of Civil Proceedure ("FRCP") Rule 4, signed and returned that Request to Waive Service to Receiver Nohr on September 26, 2014, via Certified Mail.  Rule 4 provides that Defendant Day submit the Request for Waiver to Receiver Nohr within no less than 30 days from the date of that Notice to her, and then file her Answer (or Motion to Dismiss in this case) in the Court, within 60 days from the date of that Request to Waive Service, which Defendant Day has fully complied with.

On September 11, 2013, this Court, in the initial securities violations case 1:14-cv-04028-SCJ brought by the SEC against the Receivership Defedants, Ordered that Receiver Nohr may pursue "*potentially viable*" third party claims that were described by Receiver Nohr in a prior report to the Court.   See that September 11, 2013 Order.

However, the Court did not provide for Receiver Nohr to file claims against Defendants that were NOT viable, or ones that Receiver Nohr should have known were NOT viable, yet this is what Defendant Day believes has occurred against her, and potentially, many other of the Defendants in this case, further elaborated on below.

Along with the aforementioned September 26, 2014 certified letter to Recevier Nohr from Defendant Day, and then another on September 29, 2014, Defendant Day, among other things, carefully explained how BOTH claims against her were barred by the statues of limitations; how the Unjust Enrichment claim in Count 2 was inappropriate in the Court in any event against ALL Defendants since there was an "Adequate Remedy at Law" by virtue of the fraudulent transfer claims in Count 1, and then, how the Unjust Enrichment claim in Count 2 against Defendant Day individually was also barred because there were valid contracts between herself and one of the SEC case Receivership Defendants, Diane Alexander, each of which are attached to this Brief with an accompanying affidavit executed by Defendant Day, as Exhibit A, and are hereby incorporated within.

In those two letters to Receiver Nohr, Defendant Day cited relevant law (and does so below) and requested that Receiver Nohr dismiss the Complaint against her.  Receiver Nohr never responded to these two letters sent by Defendant Day,

ie., not even to acknowledge her position, or state why his position may be contrary to Defendant Day's, and has thus, in Defendant Day's opinion, acted in bad faith, obviously forcing her to file this Motion to Dismiss in the Court.

In conclusion to this opening part, although not relied on in this Brief in Support of her Motion to Dismiss, Defendant Day is compelled to inform the Court that prior to being notified of the subject lawsuit, she never heard of any of the MSC entities that Receiver Nohr is representing. Rather, Defendant Day only knew Diane Alexander and only entered into simple loan contracts with simple interest terms with her, with no mention in any of those contracts of any of the illegal activities complained of by Receiver Nohr in the subject Complaint.

Defendant Day thus, believes that Receiver Nohr, on behalf of the MSC entities, should not be the real party in interest in this case to bring the claims against her. However, Defendant Day does realize that since the Court did authorize Receiver Nohr to pursue third party claims, she, as above, does not rely on this issues as a defense. It is only that Defendant Day believes the Court should understand that she knew nothing about the MSC entities prior to being notified of this lawsuit, which is likely the situation with many of the other Defendants in this case.

Defendant Day does rely however on these contracts between Diane Alexander and herself (which are attached within Exhibit A to this brief and incorporated within above) as one of her ancillary defenses, to the extent that they (the contracts) are relevant to the (non) viability of the Unjust Enrichment claim against her pursuant to the law, and since these were contracts between her and Diane Alexander apparently were related to the claims made by Receiver Nohr in the subject Complaint, as they only could have been.  See below.

## MEMORANDUM OF LAW AND ARGUMENT

### COUNT 1 – FRAUDULENT TRANSFER

**Plaintiff Receiver Nohr 's Count 1 For Fraudulent Transfer is Time Barred by The Statutes of Limitations**

Receiver Nohr's Count 1 for Fraudulent Transfers against Defendant Day is barred by the relevant Statutes of Limitations, and Defendant Day first shows the court;

"*A Defendant may assert a statute of limitations defense in a rule 12(b)(6) motion where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an*

*action is untimely under the governing statute of limitations.* United States v Lewis, 411 F.3d 838 (7th Circuit 2005);  See also, Tamayo, F526 F.3d @ 1086 (*a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims*).

Moreover, the following is taken from the Complaint in this case in this Court, which is assumed to be true for purposes of a Motion to Dismiss.  See Reger Development, LLC v National City Bank, 592 F.3d, 759, 763 (7th Circuit 2010).

Receiver Nohr pleads in the title of his Count 1 for Fraudulent Transfers, at page 70 of the Complaint, how his claim is brought pursuant to OCGA 18-2-74 of the (Georgia) Uniform Fraudulent Transfers Act.  See page 70 of the Complaint.

Also, Receiver Nohr apparently relies on section (a)(1) of 18-2-74 for Count 1, which is the most stringent, since that section pertains to actual fraud, ie., "*an actual intent to defraud creditors*", in the commission of a fraudulent transfer, and, since the Complaint shows at item 4, how the Receivership Defendants admitted that they operated a fraudulent Ponzi Scheme.

OCGA 18-2-79 is the unquestionable relevant statute of limitations for claims brought pursuant to OCGA 18-2-74.  Moreover, 18-2-79(1) is the relevant part that pertains to 18-2-74(a)(1).

OCGA 18-2-79(1) states:

*"Time for commencement of action;*

*A cause of action with respect to a fraudulent transfer or obligation under this article is **extinguished** unless action is brought;*

*(1) Under paragraph (1) of subsection (a) of Code Section 18-2-74, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;*

Obviously, there are two parts to 18-2-74, ie., the first being that the action is extinguished if not brought within 4 years of the transfer or obligation, or, the second, if the action is not brought within 1 year after the transfer or obligation "was or could reasonably have been discovered by the claimant".

Regarding the first, Defendant Day shows the Court how Receiver Nohr pleads within the four corners of the Complaint at page 62, item # 357, how there was $111,564 received by Defendant Day in "false profits", and elaborates at item 358 how the dates and amounts to and from Defendant Day are/were described in Exhibit A, that was attached to the Complaint.

Upon review of those amounts as shown at pages 38 and 39 of Exhibit A to the Complaint, the Court will find how Receiver Nohr pleads how there were three transfers made to Defendant Day, ie., one on August 7, 2008, one on January 7,

2010, and the last one being on August 3, 2010. See Pages 38 and 39 of Exhibit A to the Complaint and Defendant Day reminds the Court that all allegations in the Complaint are assumed to be true for purposes of a Motion to Dismiss, pursuant to Reger, supra.

Defendant Day notes, before continuing, that the "obligations" as cited in 18-2-79(1) are obviously "obligations" that would have been incurred by the debtor, ie., Diane Alexander in this case, and those obligations would/could only have been what Ms. Alexander "obligated" herself to, which would/could only have been her promises made in the subject contracts between herself and Defendant Day. Accordingly, since these contracts were prior to any of the actual transfers made and complained of, and thus, even older, the timing of these "obligations" are moot as far as time limitations are concerned.

The above referenced three transfers are of course, the fraudulent transfers that Receiver Nohr refers to and relies on in his Complaint against Defendant Day and the claims against Defendant Day are for "*false profits*" only. See item 357 of the subject Complaint.

The Complaint was filed against Defendant Day in this case in this Court, on August 26, 2014.

Therefore, simple common logic and basic math dictates then, that the Complaint was filed against Defendant Day more than four years from the time any of the transfers were made to Defendant Day and ALL of Receiver Nohr's fraudulent transfer claims against Defendant Day in Count 1, are thus, **"extinguished"** and fail to state a claim in relation to the aforementioned first part of OCGA 18-2-79(1).

Regarding the aforementioned second part of 18-2-79(1), Defendant Day now shows the Court how the fraudulent transfer claims Receiver Nohr brought against her that were later than four years from the time they occurred (which would include all three of the aforementioned transfers), are also **"extinguished"** and time barred since those claims were NOT brought *"within one year after the transfer or obligation was or could reasonably have been discovered by the claimant* (Receiver Nohr), pursuant to the second part of 18-2-79(1), further elaborated on as follows;

At item 12 of the Complaint in this case, Receiver Nohr states;

*"On June 14, 2013, the Receiver filed his report with the Receivership Court regarding third party claims.   Therein, <u>Plaintiff confirmed the results of his preliminary investigation indicating that many investors apparently received payment that exceeded their principal giving rise to "**false profits**" claims</u>."*

The entitlement of that June 14, 2013 report was "*Receiver's Report and Recommendation to Continue Receivership in Order to Pursue Third Party Claims*", and is a matter of record in this Court (but not this case) and Receiver Nohr goes on to state in that report at the bottom of page 9 and top of page 10;

*"Based upon the Receiver's analysis of records in his possession, the Receivership Estate has the right to recover "false profits" from those investors who received more than their principal in the aggregate amount of $3,110,496 in "false profits" discovered to date".*

Defendant Day has calculated that Receiver Nohr only brought claims for "*false profits*" against the many Defendants in the subject Complaint in the aggregate amount of $2,651,561, which of course, is even less than what the Receiver reported he had discovered as of his June 14, 2013 report to the Court.

There can be no question then that the fraudulent transfers Receiver Nohr complains of against Defendant Day in the subject Complaint either "were or reasonably could have been discovered by him", on or before his June 14, 2013 "Receiver's Report", wherein he recommends to the Court to proceed with the third party claims.

Accordingly, since the Complaint against Defendant Day was filed on August 26, 2014 (some 14+ months after June 14, 2013), it is axiomatic then that

the claims for fraudulent transfers that were brought against Defendant Day by Receiver Nohr, are/were NOT within the statutory one year time limitation from the time they either <u>were or reasonably could have been discovered by him</u>, and they therefore are "**extinguished**" as provided for in the aforementioned second part of OCGA 18-2-79(1).

Moreover, Defendant Day is compelled to note that this issue should be very important to the Court since many Defendants in this case had not only so called "<u>false profits</u>" that were on or before the four year time period of time that the Complaint was filed, but "<u>referral fees</u>" as well, ie., monies paid to them on or before August 25, 2010.   Thus, many Defendants will be effected by this second part of OCGA 18-2-79(1) and the aforementioned facts and Defendant Day reminds the Court that she knew nothing about the illegal activities that the Receivership Entities were involved in, and believes that many other investors did not know of the same, as well.   Some likely did, but many for sure, did not, but what really matters here is that all of those Defendants (including Defendant Day) deserve fair treatment under the law, which in this instance, would/should be that any claim in this case against any so called "false profits" or "referral fees" that were made on or before August 25, 2010, should be disallowed by the Court, pursuant to the second part of 18-2-79(1).

In conclusion to this entire part, all of the fraudulent transfer claims brought by Receiver Nohr against Defendant Day in Count 1 of the subject Complaint, are time barred and "**extinguished**" and Receiver Nohr has thus, failed to state a claim for fraudulent transfers for which relief may be granted by the Court for the same.

## COUNT 2 – UNJUST ENRICHMENT

Plaintiff Receiver Nohr 's Count 2 against Defendant Day for Unjust Enrichment is barred for any one of three separate reasons, ie., 1) Barred by The Statutes of Limitations, 2) Barred Because There is Another Adequate Remedy at Law, and, or  c) Barred Because There Was a Contract Between the Parties.

As at page 6 & 7, above, allegations from the Complaint in this case are assumed to be true for purposes of a Motion to Dismiss.  See <u>Reger Development, LLC v National City Bank</u>, 592 F.3d, 759, 763 (7th Circuit 2010).

## 1) <u>Count 2 is Barred Against Defendant Day by the Statutes of Limitations;</u>

Also, as at page 7, above, a statute of limitations defense is appropriate in a rule 12(b)(6) Motion to Dismiss.  See <u>United States v Lewis</u>, 411 F.3d 838 (7th Circuit 2005);  See also, <u>Tamayo</u>, F526 F.3d @ 1086.

Albeit somewhat confusing in the law researched by Defendant Day, she believes that an Unjust Enrichment claim in Georgia must be brought within 4 years from the time the transaction that the Plaintiff complains of occurred, pursuant to OCGA 9-3-32, ie., for injury to personal property.

As shown at pages 8 & 9 above, ALL three of the transfers to Defendant Day that Receiver Nohr complains of were NOT within four years from the time the Complaint was filed on August 26, 2014. The dates of those transfers were August 7, 2008, January 7, 2010, and the last one being on August 3, 2010. See pages 8 and 9, above.

In near conclusion to this part, in the event some other obscure statute of limitations were/are to govern and apply to Count 2 for Unjust Enrichment, which would exonerate Defendant Day based on the timing of the transfers to her, and thus, qualify for the Unjust Enrichment claim in Count 2 to be dismissed pursuant to that given statute, Defendant Day then requests that the Court apply that statute and dismiss Count 2 against her.

In conclusion, Receiver Nohr has failed to state a claim for Unjust Enrichment for which relief may be granted by the court for Count 2, pursuant to the statutes of limitations, and Defendant Day thus, requests that the Court dismiss Count 2 against her for this reason.

**2. Count 2 is Also Barred Against Defendant Day Since There Was/Is An Adequate Remedy at Law for Receiver Nohr;**

In <u>Kelly v. College of St. Benedict</u>, 901 F.Supp.2d 1123 (D. Minn. 2012), Receiver Kelly, on behalf of the given Receivership entities in that case, brought numerous claims against the College of St. Benedict. Several of which (Counts VI thru IX, were for fraudulent transfers, on behalf of the U.S. Government for $2,000,000 that was previously given to the college by the Receivership Defendants. Those claims were based on the Federal Debt Collections Practice Act ("FDCPA") and, the first four, ie., Counts I thru IV, were for fraudulent transfers based on Minnesota's Fraudulent Transfers Act ("MFTA") for a $1,000,000 pledge made to the college by the Receivership Defendants, and one count, ie., Count V for **Unjust Enrichment** based on the aforementioned $2,000,000 given to the college.

The District Court dismissed the $2,000,000 fraudulent transfer/FDCPA claims @ 1131 in that opinion because it found that Receiver Kelly had no standing to bring those claims, as only the Federal Government could.

Then, also @ 1131 in that opinion, the District Court dismissed Counts 1 – IV for fraudulent transfer regarding the $1,000,000 pledge pursuant to the MFTA, because the college agreed to no longer attempt to enforce that pledge.

Then, the district court addresses Count V for the the **Unjust Enrichment** claim and opines @ 1132;

"*Kelley's final claim asserts that the College was unjustly enriched by the $2 million it received through the pledge. The College argues that <u>an equitable claim, such as unjust enrichment, cannot stand where "there is an adequate legal remedy or where statutory standards for recovery are set by the legislature.</u>" (Reply at 15 (quoting Southtown Plumbing, Inc. v. Har–Ned Lumber Co., 493 N.W.2d 137, 140 (Minn.Ct.App.1992)).) **The Court agrees**".*

The District Court continues to point out that even though Receiver Kelly did NOT bring any MFTA claims on behalf of the Receivership Entities for the $2 million given to the college, he (Receiver Kelly) was still, nonetheless, precluded from bringing the Unjust Enrichment claim for the $2 million since he "could have" brought an MFTA claim for the same. Although not particularly relevant to this case (since Recevier Norh did bring fraudulent transfer claims), the Court nonetheless so opines at 1132, as follows;

"the mere fact that a plaintiff "fail[s] to pursue [an] available legal remedy [does]

not entitle [him] to relief"); Mon–Ray, Inc. v. Granite Re, Inc., 677 N.W.2d 434,

440 (Minn.Ct.App.2004); see also Drobnak v. Andersen Corp., 561 F.3d 778, 787

(8th Cir.2009) (affirming dismissal of equitable claims because "plaintiffs would

have had an adequate legal remedy ... if they had adhered to the ... Rule 9(b)

pleading requirements") (emphasis added).

But what is particularly relevant to this case, Defendant Day now shows how

the District Court in Kelly also makes it clear @ 1132 that there can be no relief

for the equitable claim for Unjust Enrichment for a Plaintiff even if he/she does

bring an action at law and is then unsuccessful with that action, as is so in this case

against Defendant Day, since Count 1 against her, as above, is barred by the statute

of limitations.  Simply put, the courts consider an action at law to be an "Adequate

Remedy, so long as the cause of action is "practical and efficient", irrespective of

whether or not the Plaintiff is successful with his/her action at law.    The District

Court in Kelly opines so @ 1132, as follows;

"dismissing unjust-enrichment claim under Southtown despite plaintiffs' argument

that "if their fraudulent transfer claims fail, they will not have an adequate remedy

at law"); Munshi, 2007 WL 92852, at *2";;   "The MFTA provided Kelley with an

adequate legal remedy here. "In order for a legal remedy to be adequate it must be practical and efficient." Munshi, 2007 WL 92852, at *2.

Finally, in relation to Kelly, supra, Defendant Day shows how Receiver Kelly complained that there were other cases that permitted fraudulent transfer and Unjust Enrichment claims to co-exist. The District Court rejects this argument @ 1132, 1133, as follows;

"Kelly points out that several cases have permitted fraudulent-transfer claims and unjust-enrichment claims to coexist. ( See 10/4/12 Hear. Tr. at 22–24.) This is perhaps not surprising, given that the Federal Rules of Civil Procedure allow for pleading claims in the alternative. SeeFed.R.Civ.P. 8(d)(2)-(3). But in any event, the Court has carefully reviewed the cases Kelley has cited,[5] and none appears to have been confronted with the argument made by the College here: the availability of an adequate legal remedy precludes resort to unjust enrichment **_as a matter of_ _law_**. By contrast, the Court recently applied this principle in Cummins, and it perceives no reason to hold otherwise in this case. See also Bartholomew v. Avalon Capital Group, Inc., 828 F.Supp.2d 1019, 1030 (D.Minn.2009) (Davis, J.) (**_no_** **_unjust enrichment where receiver also brought claims under MFTA_**).

Just as with the college in Kelly, supra, Defendant Day, in this case, is formally **confronting the argument** that "_the availability of an adequate legal_

_remedy_ (for Receiver Nohr) _precludes resort to unjust enrichment_ **_as a matter of_**
**_law._**_"_

Accordingly, Georgia's Uniform Fraudulent Transfers Act, for which
Receiver Nohr in this case relies on in Count 1, is an "Adequate Remedy at Law"
and a "statutory standard for recovery" set by the Georgia legislature, and it is
irrelevant that Receiver Nohr's Count 1 against Defendant Day fails, as argued
above, due to the statute of limitations. It (Count 1) was/is an "Adequate Remedy"
for Receiver Nohr in any event, and he is precluded from bringing his Unjust
Enrichment claim, not only against Defendant Day, but apparently, against ALL
Defendants in this case as well, pursuant to the Federal District Court's opinion
and citation of numerous other courts, in Kelly, supra. And as with the second part
of OCGA 18-2-79(1) explained above, this issue should be very important to the
Court since it effects many of the Defendants. But upon further consideration, in
fact, this issue affects ALL the Defendants in this case. Unjust Enrichment against
ALL of them is an invalid claim since Defendant Nohr has/had an "Adequate
Remedy at Law" in his fraudulent transfer claims he brought against ALL.

In conclusion to this part, Defendant Day realizes she has no standing to ask
the Court to dismiss the subject Unjust Enrichment claim against ALL Defendants
and only requests at this point that the Court immediately dismiss the Unjust

Enrichment claim against her in Count 2 of the Complaint, individually, since Receiver Nohr had an "Adequate Remedy" and has thus, failed to state a claim for Unjust Enrichment for which the Court may grant relief for.

### 3.  Count 2 is Also Barred Against Defendant Day Since There Was a Legal Contract Between the Parties;

In addition to items 1 and 2 above in this section, Receiver Nohr is also barred from bringing his "Unjust Enrichment" claim against Defendant Day in his Count 2 since the theory of "Unjust Enrichment" can only apply when there is NO "legal contract" between the parties, pursuant to an abundance of case law in Georgia.

 *"The theory of unjust enrichment only applies when there is **no legal contract** and when there has been a benefit conferred which would result in an unjust enrichment unless compensated. See OCGA 9-2-7; Zampatti v. Tradebank Intl. Franchising Corp., 235 Ga. App. 333, 340 (5) (508 SE2d 750); Smith v. Huckeba, 232 Ga. App. 374, 376 (2) (501 SE2d 877) (1998), COCHRAN et al. v. OGLETREE, (244 Ga. App. 537)(536 SE2d 194)(2000)", SMITH SERVICE OIL COMPANY, INC. v. PARKER (250 Ga. App. 270)(2001), SMITH et al. v.*

*MCCLUNG (215 Ga. App. 786)(452 SE2d 229)(1994).* SMITH et al. v. HUCKEBA, (232 Ga. App. 374)(501 SE2d 877)(1998).

As at page 4 above, and as shown in the attached Exhibit A with Defendant Day's affidavit with exhibits, there were "legal contracts" (the exhibits) between the Receivership Defendant Diane Alexander and Defendant Day, and Receiver Nohr thus, may not be allowed to recover under his alternative theory of "Unjust Enrichment" as it pertains to Defendant Day. See Exhibit A.

As above, each of these contracts between Ms. Alexander and Defendant Day were for a simple interest loan only from Defendant Day to Ms. Alexander, with no mention of any of the illegal activities Recevier Nohr complains of in any part of the Complaint.

They were simple interest loan contracts, they were not usurious or illegal in any manner or form, on their face, irrespective of where the funds that Ms. Alexander paid to Ms. Day would have came from, and they were fully satisfied, leaving no person (or entity) any right to sue upon them.

Moreover, since Receiver Nohr was authorized by this Court to pursue "third party claims", it must be construed that the contracts between Ms. Alexander and Defendant Day, were between the parties, and thus, applicable to this part.

Otherwise, Receiver Nohr should not be allowed to sue Defendant Day since she would then not be the "real party in interest" in this case.

In conclusion to this part, those contracts between Ms. Alexander and Defendant Day were "legal contracts", and based upon an abundance of case law in Georgia, Receiver Nohr's Unjust Enrichment Claim in Count 2 is barred against Defendant Day due to those valid contracts between the parties, and Receiver Nohr has thus, failed to state a claim for Unjust Enrichment for which relief may be granted by the court in relation to such.

## CONCLUSION

As clearly shown above, Receiver Nohr's Count 1 for fraudulent transfers against Defendant Day, is without question, time barred by the relevant statute of limitations.

So too, is Reciever Nohr's Count 2 for Unjust Enrichment against Defendant Day barred due to; a) the relevant statute(s) of limitations; b) because there was an "Adequate Remedy at Law", and/or; c) because thee were valid contracts between the parties.

Accordingly, since Receiver Nohr has failed to state a claim for which relief may be granted in the Court for any of these claims, Defendant Day requests,

pursuant to FRCP 12(b)(6), that this Court immediately grant her Motion to Dismiss and dismiss ALL claims against her, and in fact, the entire Complaint, with prejudice.

Respectfully Submitted This _24th_ Day of October, 2014

Norma Day

Room 212

2899 Five Forks Trickum Rd.

Lawrenceville, Ga.  30044

# EXHIBIT A

# To Defendant Day's

# Brief in Support of Her  Motion to Dismiss

# Ie.,

### Defendant Day's Affidavit and Copies of Her Three Contracts With

### Receivership Defendant Diane Alexander

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**Plaintiff**

**JASON L. NOHR, Receiver for**      **CASE# 1:14-cv-02761-SCJ**
**MSC HOLDINGS USA, LLC,**
**MSC HOLDINGS, INC., and MSC**
**HOLDINGS, LLC**

**Defendants**

**NORMA DAY, PRO SE, et al**      **Jury Trial Requested**
      **On Any Issue of Fact**

## AFFIDAVIT

Comes now, Defendant Norma Day and swears under oath that the facts stated within her "Motion to Dismiss", as well as the three contracts that are attached to Exhibit A to her Brief in Support of her Motion to Dismiss, and which are all being filed in the Court along with this Affidavit and being served upon the Plaintiff, are true to the best of her knowledge and belief.

_____,    _____,
Norma Day, pro se            Date Signed;

_____,
NOTARY

MY COMMISSION EXPIRES ____01: 24: 2017____,

RODICA GRIGORAS
NOTARY PUBLIC
Gwinnett County
State of Georgia
My Comm. Expires Jan. 14, 2017

Receipt of Funds        RAR 285
and
## GENERAL PERFORMANCE AGREEMENT

**THIS AGREEMENT** made this 7th day of July 2008, by and between Dianne Alexander First Party, and Norma D. Day, 9305 St Georgen Common, Duluth, Georgia, 30097, Second Party.

**WITNESSETH:** The First Party and Second Party acknowledge that the First Party is not a broker nor does she represent herself as such. That in consideration of the mutual covenants and agreements to be kept and performed on the part of said Parties hereto, respectively as herein stated, the said Party of the first part does hereby covenant and agree that it shall:

I.   Dianne Alexander, First Party, on behalf of Norma D. Day, Second Party, hereby agrees to manage a loan, to the best of her ability, of Fifty Thousand Dollars ($50,000.00) hereinafter referred to as the loan. First Party will continue to manage said loan for Second Party along with personal money of the First Party. This loan should return to the Second Party a sum of Thirty Eight Percent (38%) per year as requested by Second Party consistent with previous agreements. This agreement shall remain in effect for One Year and a Day from July 15,2008. Second Party's funds will be placed per their own discretion and instruction on July 15,2008. All interest on said loan received after July 15,2008 will be prorated.

II.  And said Party of the second part covenants and agrees that it shall:

Placement of the above referenced funds will reoccur automatically at the end of this agreement. This agreement will automatically renew for another period of One Year and a Day, unless Second Party notifies First Party within fifteen days (15) of the expiration of this agreement, or at the time of notification by the First Party of an early completion of this agreement. This agreement supersedes all previous agreements.

III. Other terms to be observed by and between the parties:

All interest accrued will be paid within ten (10) banking days of receipt by the First Party. Second Party has received $18,844.00 in interest for 362 days.

This agreement shall be binding upon the Parties, their successors, assigns and personal representatives. Time is of the essence on all undertakings. This agreement shall be enforced under the laws of the State of Georgia. This is the entire agreement.

Signed the day and year first above written.

Signed in the presence of:

First Party        LDA 253 RD

Witness

Second Party        NDD 930-01R

Receipt of Funds        RAR 285
and
## GENERAL PERFORMANCE AGREEMENT

**THIS AGREEMENT** made this 7th day of July 2009, by and between Dianne Alexander First Party, and Norma D. Day, 9305 St Georgen Common, Duluth, Georgia, 30097, Second Party.

**WITNESSETH:** The First Party and Second Party acknowledge that the First Party is not a broker nor does she represent herself as such. That in consideration of the mutual covenants and agreements to be kept and performed on the part of said Parties hereto, respectively as herein stated, the said Party of the first part does hereby covenant and agree that it shall:

I.      Dianne Alexander, First Party, on behalf of Norma D. Day, Second Party, hereby agrees to manage a loan, to the best of her ability, of Fifty Thousand Dollars ($50,000.00) hereinafter referred to as the loan, plus interest of ($19,000.00), making total to be managed of Sixty Nine Thousand Dollars ($69,000.00). First Party will continue to manage said loan for Second Party along with personal money of the First Party. This loan should return to the Second Party a sum of Thirty Eight Percent (38%) per year as requested by Second Party consistent with previous agreements. This agreement shall remain in effect for One Year and a Day from July 30, 2009. Second Party's funds will be placed per their own discretion and instruction on July 30, 2009. All interest on said loan received after July 30, 2009 will be prorated.

II.     And said Party of the second part covenants and agrees that it shall.

        Placement of the above referenced funds will reoccur automatically at the end of this agreement. This agreement will automatically renew for another period of One Year and a Day, unless Second Party notifies First Party within fifteen days (15) of the expiration of this agreement, or at the time of notification by the First Party of an early completion of this agreement. This agreement supersedes all previous agreements.

III.    Other terms to be observed by and between the parties:

        All interest accrued will be paid within ten (10) banking days of receipt by the First Party. Second Party has received ($37,844.00) in interest on this agreement.

This agreement shall be binding upon the Parties, their successors, assigns and personal representatives. Time is of the essence on all undertakings. This agreement shall be enforced under the laws of the State of Georgia. This is the entire agreement.

Signed the day and year first above written.

Signed in the presence of:

_____
First Party          LDA 253 RD

_____
Witness

_____
Second Party        NDD 930-01X2

Receipt of Funds      RAR 285
and
## GENERAL PERFORMANCE AGREEMENT

**THIS AGREEMENT** made this 26th day of December, 2008, by and between Dianne Alexander First Party, and Norma D. Day, 9305 St Georgen Common, Duluth, Georgia, 30097, Second Party.

**WITNESSETH:** The First Party and Second Party acknowledge that the First Party is not a broker nor does she represent herself as such. That in consideration of the mutual covenants and agreements to be kept and performed on the part of said Parties hereto, respectively as herein stated, the said Party of the first part does hereby covenant and agree that it shall:

I.      Dianne Alexander, First Party, on behalf of Norma D. Day, Second Party, hereby agrees to manage a loan, to the best of her ability, of One Hundred Twenty Five Thousand Dollars ($125,000.00) hereinafter referred to as the loan. First Party will continue to manage said loan for Second Party along with personal money of the First Party. This loan should return to the Second Party a sum of Thirty Eight Percent (38%) per year as requested by Second Party consistent with previous agreements. This agreement shall remain in effect for One Year and a Day from January 2, 2009. Second Party's funds will be placed per their own discretion and instruction on January 2, 2009. All interest on said loan received after January 2, 2009, will be prorated.

II.     And said Party of the second part covenants and agrees that it shall:

Placement of the above referenced funds will reoccur automatically at the end of this agreement. This agreement will automatically renew for another period of One Year and a Day, unless Second Party notifies First Party within fifteen days (15) of the expiration of this agreement, or at the time of notification by the First Party of an early completion of this agreement. This agreement supersedes all previous agreements.

III.    Other terms to be observed by and between the parties:

All interest accrued will be paid within ten (10) banking days of receipt by the First Party.

This agreement shall be binding upon the Parties, their successors, assigns and personal representatives. Time is of the essence on all undertakings. This agreement shall be enforced under the laws of the State of Georgia. This is the entire agreement.

Signed the day and year first above written.

Signed in the presence of:

_____
First Party      LDA 253 RD

_____
Witness

_____
Second Party      NDD 930-02

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**Plaintiff**

JASON L. NOHR, Receiver for       <u>CASE# 1:14-cv-02761-SCJ</u>
MSC HOLDINGS USA, LLC,
MSC HOLDINGS, INC., and MSC
HOLDINGS, LLC

**Defendants**

NORMA DAY, PRO SE, et al         **Jury Trial Requested**
                                     **On Any Issue of Fact**

## CERTIFICATE OF SERVICE

I hereby certify that I have, this day, served a copy of the foregoing; Defendant Norma Day's "Motion to Dismiss", upon opposing counsel, pursuant to this Court's local rule 5.2(1), by depositing in the United States Mail, ie., via First Class Mail, a copy of the aforementioned document, with adequate postage affixed thereon, addressed as follows;

James L. Nohr, Esq.
Cauthorn, Nohr & Owen
212 Church St.
Marietta, Ga.  30060

Defendant Day notes that she is not serving her Motion to Dismiss upon all the many other Defendants in this case pursuant to FRCP 5(a)(1)(D), since the above local rule 5.2(1) seems to preclude that requirement.  However, Defendant Day will serve all other Defendants with her Motion to Dismiss if so ordered by the Court.

signature on next page

This the 24th day of October, 2014

Norma Day
Room 212
2899 Five Forks Trickum Rd.
Lawrenceville, Ga. 30044