IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JASON L. NOHR, Receiver for MSC HOLDINGS USA, LLC, MSC HOLDINGS, INC., and MSC GA HOLDINGS, LLC, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE |
| CORINNA JANG, et al., | ) ) ) | NO. 1:14-cv-02761-SCJ |
| Defendants. | ) ) | |

**RECEIVER'S RESPONSE TO
DEFENDANT NORMA DAY'S MOTION TO DISMISS**

Plaintiff Jason L. Nohr, as Receiver for MSC Holdings, USA, LLC, MSC Holdings, Inc., and MSC GA Holdings, LLC (hereinafter "the Receivership Estate"), hereby responds to Defendant Norma Day's Motion to Dismiss.

**A. Summary Statement**

Defendant Day claims that the Receiver's action to recover the $111,564 in "false profits" (i.e., the amount she was paid by the Receivership Estate in excess of what she "invested") is barred by the statute of limitations. Specifically, Day claims that the Receiver's claims under the Georgia Uniform Transfer Act ("GUFTA") are time-barred because they were not filed within one year of when

1

these claims "could reasonably have been discovered" by the Receiver under the discovery clause for fraudulent transfers set forth by O.C.G.A. § 18-2-79(1).

Defendant Day's Motion ignores the express provisions of the Order of Appointment precluding the Receiver's pursuit of third party claims unless and until he receives Court authorization.  Upon receiving the requisite authority, the Receiver undertook steps necessary to analyze the many complex transactions, participants, amounts, and dates (including obtaining and scrutinizing thousands of pages of banking records) in order to determine which, if any, transactions were of a fraudulent nature.

The Receiver's fraudulent transfer claims did not accrue until the Court granted him the necessary authority to further investigate and pursue them on September 11, 2013.  The Complaint was filed less than one year after the Court granted this requisite authority and within one year of the time that the factual and legal bases of the GUFTA claims involving Day "could reasonably have been discovered."  Day's statute of limitation defense must fail because the Receiver timely filed this action less than one year after the GUFTA claims accrued.

Day also alleges that the Receiver's unjust enrichment claims are untimely and precluded by the existence of a valid contract.  The applicable limitations period for such claims, however, is four years from the date of accrual.  Here, the

Complaint was filed less than one year from when the fraudulent transfer and unjust enrichment claims accrued. In addition, Defendant Day's illegal contract to participate in a Ponzi scheme and whose performance violated federal securities laws does not preclude the Receiver's unjust enrichment claims.

Because Day cannot meet her burden of proving that the Receiver's claims are time barred or otherwise precluded by applicable law, her Motion to Dismiss should be denied.

### B. Motion To Dismiss Standard

Under Federal Rule 12(b)(6), a court may grant a motion to dismiss if it finds that the plaintiff cannot prove any set of facts consistent with the complaint which would entitle him or her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). When deciding whether to dismiss a claim under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's allegations of material fact as true. *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998). To prevail, a defendant bears "the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle them to relief." *See Beck*, 144 F.3d at 736.

Defendant Day cannot meet this "very high burden" of proving the Complaint should be dismissed because the Receiver filed his action less than one

year after the Court granted him the requisite leave to investigate and pursue actions against third parties and when the fraudulent transfers "could reasonably have been discovered," pursuant to O.C.G.A. § 18-2-79(1).  In addition, the unjust enrichment claims asserted are neither time-barred nor precluded by the existence of a valid legal contract.

### C. The Receiver Promptly Investigated And Pursued Third Party Claims Upon Receiving Necessary Court Approval

In a February 11, 2013 Order, the Court appointed Plaintiff as Receiver for the Receivership Estate.  *See SEC v. McClintock, et al.*, Case No. 1:12-CV-04028-SCJ (N.D. Ga.) [Docket Entry No. 19].  Of particular importance to the issues now before the Court, the Order of Appointment expressly required the Receiver to obtain Court approval before proceeding with any claims against third parties.  *Id.* at 19-20, ¶ 42 ("… leave of this Court is required to resume or commence certain litigation[.]"), ¶ 43 ("… after obtaining leave of this Court to institute such actions and legal proceedings[.]").  This limitation upon the Receiver's authority was an appropriate exercise of the Court's appointment authority, pursuant to pursuant to Fed. R. Civ. P. 66 and 28 U.S.C. § 959, and designed to safeguard and preserve resources for the ultimate distribution to defrauded investors.

In a June 14, 2013 Report and Recommendation, the Receiver described the results of his preliminary investigation into potentially viable third party claims,

including their legal (but not factual) basis, and requested permission to further pursue these claims on behalf of the Receivership Estate. [Docket Entry No. 30]. The SEC agreed with the Receiver's Report and Recommendation, and the Court entered an Order allowing the Receiver to proceed on September 11, 2013. [Docket Entry No. 36].

Prior to obtaining Court approval to pursue third party claims, the Receiver had neither identified the factual basis for such claims, determined which transactions were fraudulent, identified the recipients of any fraudulent transfers or their locations, nor requested or reviewed the thousands of pages of documents necessary to obtain this information. After the Court entered the September 11, 2013 Order, the Receiver undertook further efforts to investigate and pursue third party claims, including the following:

- Continued comparison of information provided by Defendant Alexander to bank records obtained by Receiver to verify exact amounts paid to and received from investors.

- Obtained and reviewed thousands of pages of additional bank account documents and records in late 2013 and early 2014.

- Obtained and reviewed documents from FDIC for failed banks where Defendants McClintock and MSC Holdings held accounts.

- Prepared and mailed letters to 96 individuals who, according to banking records, received "false profits" and "referral fees." Received

numerous letters and inquiries from investors and attorneys regarding Receiver's demand for return of "false profits" and "referral fees."

- Reviewed and compared additional documents received from investors in response to mailings.

- Sent demand letters to "investors" demanding repayment of the referral fees and false profits that they received.

- Talked to numerous investor attorneys and investors concerning demand letters regarding repayment of "false profits" and "referral fees" to the Receivership Estate.

- Prepared responses to letters and inquiries received from investors and attorneys for investors regarding repayment of money to Receivership Estate, including conducting legal research to explain the legal bases for the Receivership's recovery efforts and legal action against investors who referred "false profits" and "referral fees."

- Received settlement checks totaling $1,077,581 (to date) from investors for the return of "false profits" and "referral fees" to the Receivership Estate.

- Sought reappointment by this Court in order to file Notices of Receivership in nineteen (19) additional federal districts to pursue third party claims for recovery. Filed Notices of Appointment in these districts, thereby allowing the Receiver to sue in the Receivership Court based upon property located outside of this District.

- Researched and verified physical addresses (for service and for filing of the Notices of Receivership) for defendants in third party actions.

- Filed Complaint in the Receivership Court on August 26, 2014 against eighty (80) individuals, including Defendant Day.

Conducting a document intensive investigation into the transactions

involved in this complex Ponzi scheme was necessary to identify the participants and amounts involved in the various transfers and to confirm the factual basis for the Receiver's fraudulent transfer claims against third parties, including Defendant Day. This in depth inquiry was not only laborious, difficult, and time consuming but also required preliminary approval by the Court.

Ultimately, the Receiver prepared and filed a Complaint on August 26, 2014 in this Court against eighty (80) individuals, including Defendant Day, asserting GUFTA and unjust enrichment claims against those investors who received "false profits" and/or "referral fees" and refused to satisfy the Receiver's pre-litigation demands. The Complaint was timely filed within one year after receiving Court approval to pursue third party claims and when the transfers at issue could reasonably have been discovered, pursuant to O.C.G.A. § 18-2-79(1).

### D. The Complaint Was Timely Filed Within One Year After Transfers "Could Reasonably Have Been Discovered"

"It is settled that an equity receiver has the power to bring ancillary actions to recover assets which were fraudulently transferred to investors in a Ponzi scheme." *Hays v. Adam*, 512 F.Supp.2d 1330, 1343 (N.D. 2007) (citing *Commodity Futures Trading Commission v. American Commodity Group*

*Corporation*, 753 F.2d 862, 866 n. 6 (11th Cir. 1984)).[1]  The timely filed Complaint seeks recovery of funds fraudulently transferred to Defendants, including Defendant Day, from the Receivership Estate in the form of "false profits" and "referral fees."

The Receiver's fraudulent transfer claims are asserted under O.C.G.A. § 18-2-74 (a)(1) of the GUFTA.  The Complaint alleges that fraudulent transfers of funds belonging to the Receivership Estate were made by the Receivership Defendants to Day (and others) "with actual intent to hinder, delay, or defraud any creditor of the debtor." *See* Complaint, ¶¶ 418 & 419.  Actual intent to defraud is presumed because the payments were made in furtherance of a Ponzi scheme.  *Id.*[2]  The applicable statutes of limitation for such claims (for "paragraph (1) of

---

[1] "The Receiver, on behalf of [the] receivership entities, is entitled to seek return of these funds for the benefit of the receivership, so that it may reimburse its creditors and/or victims of its tortious actions."  *Hays v. Adam*, 512 F.Supp.2d 1330, 1341 (N.D. 2007) (citing *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995)).

[2]  Because the transfers at issue were made pursuant to the operation of a Ponzi-type scheme (a fact alleged in the Complaint that the Defendant does not contest), actual fraud is presumed.  *See Wiand v. Lee*, 753 F.3d 1194, 1201 (11th Cir. 2014) (holding that proof that a transfer was made in furtherance of a Ponzi scheme establishes actual intent to defraud under Florida's UFTA actual fraud provision); *Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011) ("With respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud for purposes of recovering the payments[.]"); *see also Am. Cancer Soc. v. Cook*, 675 F.3d 524, 527 (5th Cir. 2012).

subsection (a) of Code Section 18-2-74") is "within four years after the transfer was made or the obligation was incurred or, if later, **within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.**" O.C.G.A. § 18-2-79(1) (emphasis added).

Defendant Day agrees that the one year discovery rule found in O.C.G.A. § 18-2-79(1) applies and, in fact, predicates her arguments for dismissal upon it. *See* Motion to Dismiss at 6, 8. Her application of the one year discovery period ignores, however, the constraints imposed upon the Receiver's ability to pursue these claims by the original Order of Appointment (requiring leave of court). The existence of these Court imposed constraints upon when the Receiver could reasonably have been discovered the fraudulent nature of the transfers is fatal to Day's statute of limitations argument.

Because of the restrictions imposed by the Order of Appointment, no fraudulent transfer claim against third parties could accrue until the Court granted the Receiver authority to pursue them.[3] Here, the Complaint against Day and other

---

[3] The Order of Appointment also tolls the statute of limitations for any "cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party." *See* Order of Appointment, §34 (*SEC v. McClintock, et al.*, Case No. 1:12-CV-04028-SCJ (N.D. Ga.) [Docket Entry No. 19]). Defendant Day's Motion to Dismiss must also fail for this reason, as well.

investors was filed on August 26, 2014, which is less than one year after the Court authorized the Receiver to approval to investigate and pursue such actions on September 11, 2013 (in *SEC v. McClintock, et al.*, Case No. 1:12-CV-04028-SCJ (N.D. Ga.) [Docket Entry No. 36]). The Complaint against Defendant Day was timely filed as a matter of law based upon these dates and the one year limitation of O.C.G.A. § 18-2-79(1).

The Complaint was also filed within one year of the time that the fraudulent nature of the transfers "could reasonably have been discovered," and, therefore, timely. That is because mere access to available information cannot support the argument that a receiver reasonably could have discovered the fraudulent transfers - thus triggering the one year discovery period - particularly when the information rises to the complexity present in receivership cases. *See Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 196 n. 10 (5th Cir. 2013). The Georgia appellate courts expressly endorse using such decisions for guidance in interpreting the UFTA.[4]

---

[4] Because the GUFTA "is modeled on the Uniform Fraudulent Transfer Act promulgated by the national Conference of Commissioners on Uniform State Laws and adopted in various forms by 43 states and the District of Columbia[,]" and "in light of the dearth of Georgia decisions construing [it]," the Georgia appellate courts look to the decisions of other jurisdictions for guidance. *See Truelove v. Buckley*, 318 Ga. App. 207, 209-10, 733 S.E.2d 499, 501 (2012) (internal citations omitted).

The defendants in *Janvey* presented an argument similar to Defendant Day's: i.e., that the discovery period expired exactly one year after the Receiver's appointment. 712 F.3d at 193. The Fifth Circuit rejected this argument and found that under the Texas UFTA (which contains a virtually identical statute of limitations as the GUFTA), **"a fraudulent-conveyance claim does not accrue until the claimant knew or reasonably could have known both of the transfer and that it was fraudulent in nature."** *Id*. (emphasis added).

Mere access to available information cannot support an argument that the Receiver reasonably could have discovered the fraudulent transfers - thus triggering the discovery period - when the information rises to the complexity present in a complex Ponzi-type scheme and receivership action. 712 F.3d at 196, n. 10. "The crucial issue is when [the Receiver] knew or could reasonably have known of the fraudulent nature of the transfers, not simply when he knew or could reasonably have known that the transfers had been made." *Id*. In addition, a defendant must "demonstrate conclusively that the Receiver knew or could reasonably have known of the fraudulent nature of the transfers for more than one year before he filed this suit." *Id*.

The relevant inquiry, therefore, is whether Defendant Day can "demonstrate conclusively" that the Receiver "could reasonably have known" about the

11

fraudulent nature of the transfers, not simply that the transactions had been made and to whom, *id.,* more than one year prior to the Receiver filing suit, under O.C.G.A. § 18-2-79(1). Defendant Day has failed to meet this burden and has "not introduced any evidence that tends to show that the Receiver knew or could reasonably have known about the true nature and duration of the Ponzi scheme for more than one year prior to the Receiver's filing of this suit[.]" *Janvey, Inc.*, 712 F.3d at 197-98; *see also Janvey v. Suarez*, 978 F. Supp.2d 685, 704 (N.D. Texas 2013) (denying motion to dismiss Receiver's TUFTA claims as untimely where defendant "fails to demonstrate from the face of their Complaint that any facts support the affirmative defense that this one-year period had expired before the action commenced.").

  The Complaint against Defendant Day and other investors was filed on August 26, 2014, which is less than one year after the Court (a) authorized the Receiver to investigate and pursue such actions (in an Order dated September 11, 2013) and (b) the fraudulent nature of the transfers reasonably could have been discovered, pursuant to O.C.G.A. § 18-2-79(1). Accordingly, Day has failed to carry her burden of proving the GUFTA claims asserted are time-barred and her Motion to Dismiss should be denied.

### E. The Unjust Enrichment Claims Were Also Timely Filed

Defendant Day's argument that the Receiver's claims for unjust enrichment are barred by the statute of limitations must also fail.  Under Georgia law, unjust enrichment claims "shall be brought within four years from the accrual of the right of action."  O.C.G.A. § § 9-3-26; *see also Hays*, 512 F.Supp.2d at 1346 (citing O.C.G.A. § § 9-3-26 as the applicable statute of limitations for unjust enrichment claims).  Irrespective of whether the Receiver's claims accrued on the date of his initial appointment (on February 11, 2013) or the date the Receivership Court authorized him to pursue third party claims (on September 11, 2014), the Complaint against Defendant Day (filed August 26, 2014) was timely filed within the applicable four year statute of limitations for unjust enrichment claims.

### F. An Unlawful Ponzi Scheme Contract Does Not Preclude The Receiver's Unjust Enrichment Claims

Defendant Day also claims that the Receiver's unjust enrichment claims must be dismissed because of the existence of a valid legal contract between her and the Receivership Defendants.  Defendant Day argues that a plaintiff cannot sustain a cause of action for unjust enrichment when a valid contract exists between the parties.  While a true legal proposition, the contract between Day and the Receivership Defendants (or "General Performance Agreement") was in furtherance of an illicit Ponzi scheme whose performance violated federal

securities laws. Because the contract was void, it does not preclude the Receiver's unjust enrichment claims.

Defendant Day correctly asserts that a plaintiff cannot sustain a cause of action for unjust enrichment under Georgia law when a valid contract exists between the plaintiff and the defendant. *See Stoker v. Bellemeade, LLC,* 272 Ga. App. 817, 615 S.E.2d 1, 5 (2005) (plaintiffs may recover under the theory of unjust enrichment "when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated"). Contracts whose performance violates federal securities laws, however, are not legal and do not preclude unjust enrichment claims. *See Hays*, 512 F.Supp.2d at 1342 ("Because the act of performance under the contracts necessarily resulted in violation of federal securities laws by the defendants, the court holds that the contracts were void and thus do not bar the Receiver's claim for unjust enrichment.").

The Receiver's Complaint alleges that the contract at issue was neither legal nor valid. The Complaint claims that the "contract" (or "General Performance Agreement," which Day attaches to the Complaint) is the byproduct of an illegal Ponzi scheme that conducted no legitimate business or enterprise. Complaint, ¶¶ 78-81 [Docket Entry No.1]. Instead, the Receivership Defendants merely used

14

investor funds to make "interest" and "referral fee" payments in order to continue and expand the scheme." *Id.*, ¶ 81.  The "investments" and payments received were "nothing more than inequitable and fraudulent transfer of money paid by other investors to a select few." *Id.*, ¶ 90.

The SEC's Complaint alleged that the Receivership Defendants operated their illicit Ponzi-type scheme to separate hundreds of investors from millions of dollars, thereby violating federal securities laws (including Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 [15 U.S.C. §§ 77e(a) and 77e(c) and 77q(a)] and Section 10(b) and 15(a) of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78j(b) and 78o(a)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5 (a),(b),&(c)]).  *See* Complaint (entered in *SEC v. McClintock, et al.*, Case No. 1:12-CV-04028-SCJ (N.D. Ga.) [Docket Entry No. 1]).

The Complaint alleges that Alexander and McClintock admitted these allegations, consented to the entry of permanent injunctions against them, and admitted operating a fraudulent Ponzi-type scheme in violation of federal securities laws.  Complaint, ¶ 4 [Docket Entry No.1].  All of these allegations are deemed true for purposes of deciding this Motion.  *See Beck*, 144 F.3d at 735.

Based upon the allegations of the Complaint, the contract at issue was illegal, invalid, entered pursuant to Defendant Day's participation in an illicit

Ponzi-type scheme, and its performance "necessarily resulted in the violation of federal securities laws[.]" *Hays*, 512 F.Supp.2d at 1342. Accordingly, there was no legal contract that bars the Receiver's claims for unjust enrichment. *Id*.

Defendant Day's Motion to Dismiss the Receiver's unjust enrichment claims should, therefore, be denied.

### G. Conclusion

For all the foregoing reasons, the Receiver's fraudulent transfers and unjust enrichment claims are valid, not time-barred, and the Defendant's Motion to Dismiss should be denied.

Respectfully submitted this  7th  day of November, 2014.

CAUTHORN NOHR & OWEN

/s Jason L. Nohr
Georgia Bar No.: 545435
Receiver

212 Church Street
Marietta, GA  30060
(770) 528-0150
jln@cauthornnohr.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day I have submitted a copy of the within and foregoing Response to Defendant Day's Motion to Dismiss so that a true and accurate copy will be provided through the CM/ECF System upon counsel of record and those Defendants who have registered with the Clerk of Court or entered appearances in this matter

This  7th  day of November, 2014.

                                                 CAUTHORN NOHR & OWEN

                                                 /s Jason L. Nohr
                                                 Georgia Bar No.: 545435

212 Church Street
Marietta, GA 30060
(770) 528-0150
(770) 528-0160 - facsimile
jln@cauthornnohr.com