FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

NOV 1 9 2014

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**Plaintiff**

**JASON L. NOHR, Receiver for**
**MSC HOLDINGS USA, LLC,**
**MSC HOLDINGS, INC., and MSC**
**HOLDINGS, LLC**

**CASE# 1:14-cv-02761-SCJ**

**Defendants**

**NORMA DAY, PRO SE, et al**

**Jury Trial Requested**
**On Any Issue of Fact**

---

## DEFENDANT NORMA DAY'S REPLY TO PLAINTIFF RECEIVER NOHR'S RESPONSE TO HER MOTION TO DISMISS

Comes now, Defendant Norma Day ("Defendant Day") and files this, her "Reply to Plaintiff Receiver Nohr's Response to her Motion to Dismiss", which is allowed pursuant to this Court's Local Rule 7.1(C).

### INTRODUCTION

Defendant Day wishes to initially express the fact that she not only provides important rebuttal to what Receiver Norh did, or equally important, did not address, in his Response to her Motion to Dismiss, but that she cites findings from this Court and new case law below in support of her defenses in this case that were not previously evoked in her Motion to Dismiss or Brief in Support of ("Brief").

Defendant Day thus, requests that this Court carefully review this Reply and

she also respectfully requests, to the extent the law allows and provides for, that this Court present its finding of facts and conclusions of law in its Order resolving her Motion to Dismiss.

## This District Court Should Not Allow Disgorgement Against Defendant Day Since There is No Evidence of Fraud or Wrongdoing Against Her

At page 7 of Receiver Nohr's Response, he cites the Hays v. Adam case from this Court, ie., at 512 F.Supp.2d 1330, 1343, in support of his contention that he, as Receiver, has the power to bring ancillary actions against third parties.

However, what Receiver Nohr did not cite from that case was how this Court agreed with the 11th Circuit in FTC v. Gem Merchandising Corp., 87 F.3d 466 (11th Cir.1996) that disgorgement is only appropriate when a Defendant has either "*participated directly in the practices or acts, or had authority to control them, or had knowledge of the practices*".   This Court ultimately found and ruled against the Defendants in Hays v. Adam however, since they "*participated directly in the practice of selling unregistered securities*".

In Gem Marketing, supra (which is an FTC case) the 11th Circuit cites two SEC cases and opines;  "*disgorgement, the purpose of which "is not to compensate the victims of fraud, but to deprive the wrongdoer of his ill-gotten gain," is appropriate. SEC v. Blatt, 583 F.2d at 1335; see, e.g., SEC v. First City Financial Corp., 890 F.2d 1215, 1230 (D.C.Cir.1989)*".

Withstanding the above, at page 3 of her Brief, Defendant Day states (swears under oath pursuant to her attached affidavit) that she knew nothing of the MSC Entities or their activities as supported by the three contracts she also attached to her Brief.  She was acquainted with Receivership Defendant Alexander via her relationship with Minister Robert Rohm, who is also a Defendant in this case, with whom (Alexander that is) Defendant Day entered into the exhibited contracts with, but she (Defendant Day), as above, knew nothing of the activities the SEC complains of in the case against the Receivership Defendants in this Court, or of the same as complained of by Receiver Norh in this case.

Moreover, Receiver Nohr did not plead anywhere within the "four corners of the Complaint", or exhibit any evidence along with the Complaint, that Defendant Day would have "*participated directly in the practices or acts, or had authority to control them, or had  knowledge of the practices*", of the Receivership Defendants.

It is likely, and in fact, perhaps inherent however, that those Defendants who received "referral fees", had knowledge of the subject illegal practices since, just like the Defendants in Hays, they were basically sales persons "*who participated directly in the practice of selling unregistered securities*".  In fact, Receiver Nohr infers wrongdoing and liability at item 16 of the Complaint against those Defendants who did receive "referral fees".

But not Defendant Day, because as stated at page 6 of her Brief, she only received what Receiver Nohr refers to as "false profits", which were only the result of simple loans made to Ms. Alexander, and not any "referral fees".

Accordingly, in light of the above citation from this Court and supporting case law, and the fact that Receiver Norh did not plead any wrongdoing on the part of Defendant Day in the Complaint, and in light of the fact that Defendant Day received no "referral fees" and committed no wrongdoing, this Court should grant her Motion to Dismiss, thereby dismissing both Counts and thus, the entire Complaint, against her, with prejudice.

## Receiver Nohr's Count 1 Against Defendant Day for Fraudulent Transfers is Barred by the Relevant Statute of Limitations

In addition to the above reasons for dismissal pursuant to the disgorgement issue, Defendant Day, as a result of Receiver Nohr's Response to her Motion to Dismiss, presents the following, which contains new facts and case law as to her time limitations defense and argues as follows;

In her Motion to Dismiss and Brief in Support thereof, Defendant Day, at pages 4-11, claims and pleads as a defense that the Fraudulent Transfers against her should be dismissed because those claims are barred by the discovery part of OCGA 18-2-79(1) which states that such claims should be brought *"within one year after the transfer or obligation was or could reasonably have been*

***discovered by the claimant".*** Receiver Nohr concurs in his Response that the discovery part of 18-2-79(1) is the controlling limitations statute for his claims and addresses and argues it throughout pages 1 thru 12 of his 16 page Response.

Throughout his Response, Receiver Nohr claims that his Fraudulent Transfer claims did not accrue until he was appointed as Receiver on February 11, 2013 by this Court, or when it approved his petition to pursue third party claims on September 11, 2013. See pages 2, 9, 10, 12 & 13 of Receiver Nohr's Response.

At the bottom of page 10 of his Response, Receiver Nohr presents "<u>Janvey v Democratic Senatorial Campaign Comm., Inc</u>." 712 F.3d, 185 and at the top of page 11 of his Response, Receiver Nohr states; *"The Defendants in Janvey presented an argument similar to Defendant Day's; ie., that the discovery period expired exactly one year after the Receiver's appointment. 712 F.3d at 193. The Fifth Circuit rejected this argument and found that under the Texas UFTA, (which contains a virtually identical statute of limitations as GUFTA)* **"A fraudulent conveyance claim does not accrue until the claimant knew or reasonably could have known both of the transfer and that it was fraudulent in nature""**.

The first part of this statement by Receiver Norh is incorrect because neither Defendant Day or the Defendants in Janvey claimed that the discovery period expired one year after the receiver was appointed (which said appointment would have been the time the Fraudulent Transfer claims allegedly would have accrued).

This because, at least as far as Defendant Day is concerned, and likely the Defendants in Janvey, such an assertion that a Fraudulent Transfers claim accrues upon the appointment of a receiver is inconsistent with the meaning of 18-2-79(1) (and the relevant identical TUFTA statute), which is solely predicated and based upon the discovery of a "transfer and its Fraudulent Nature", and not some other occurrence such as the appointment of a receiver.

Rather, Defendant Day asserts at the bottom of page 4 of her Brief and beyond, that the discovery period in this case did not expire until one year after the claims accrued on or before June 14, 2013, which was the date of Receiver Nohr's Interim Report to the Receivership Court wherein it was obvious that he had discovered not only the subject transfers by then, but their Fraudulent Nature as well, AND, nowhere in Janvey do the Defendants in that case assert that the claims against them accrued at the time of the appointment of Receiver Janvey.

However, based on new revelations of fact and law that has surfaced as a result of Receiver Nohr's Response to her Motion to Dismiss, Defendant Day now withdraws her assertion that the Fraudulent Transfer claims accrued on June 14, 2013, and now alleges and relies on all the below.

The Janvey case

What the Defendants in Janvey did argue was that the subject transfers (donations) to the Defendant Committees (five of them) either were discovered or

reasonably could have discovered **more** than a year before Receiver Janvey filed suit against them on February 19, 2010 (and thus, well before Receiver Janvey was appointed), because when the donations to the committees were made between February 17, 2000 and May 21, 2008, they were registered with a federal agency and reported in the public news media. See Janvey @ 193, 196 and 197.

The Fifth Circuit Court rejected this argument at 193 FN05 and then again at 197 FN10 however, solely because there was no evidence as of then as to the "Fraudulent Nature" of the subject transfers.

In other words, the Fifth Circuit Court no doubt infers that had there been evidence of the "Fraudulent Nature" of the transfers as of the time of any donation between February 7, 2000 and May 21, 2008, that is when the time the claims would have accrued pursuant to the discovery part of the time limitations under TEX. BUS. & COM.CODE § 24.010(a)(1) (id @ Janvey 194 FN8) which is the Texas UFTA relevant statute that is identical to OCGA 18-2-79(1).

Of critical importance, what the Fifth Circuit Court did ultimately opine in the Janvey case @ 197 and 198 FN11 was that the Fraudulent Transfer claims in that case ultimately accrued when the CEO of Receivership Defendant Stanford, one James M. Davis, in the case that the SEC brought against him, et al, on February 16, 2009, admitted guilt as to, among other things, the "orchestration of a ponzi- scheme", on August 27, 2009. See 197 and 198 of Janvey.

This because, as the Fifth Circuit Court also opines in Janvey, supra, the admission of guilt by a ponzi-scheme orchestrator imputes actual fraud, and thus, not only the inherent existence of transfers to outsiders, but of the "Fraudulent Nature" of those transfers, as well. *"This court has held that transfers from a Ponzi scheme are presumptively made with intent to defraud, because a ponzi scheme is, as a matter of law, insolvent from its inception."*. See Janvey @ 196.

Withstanding this critical opinion from the Fifth Circuit Court in Janvey, supra, it is a "**matter of law**" then that a Ponzi scheme "Fraudulent Transfers" claim accrues if and when a Receivership Defendant openly admits guilt to the orchestration of the relevant ponzi-scheme.

The Fifth Circuit Court eventually rejected ALL five of the Defendant Committees' one year time limitation argument (via granting Receiver Janvey's Motion for Summary Judgment) pursuant to TUFTA because the date CFO Davis admitted guilt on August 27, 2009, was less than one year prior to the time the Complaint was filed in that case on February 19, 2010. See the important footnote (1) from 197, 198 F10 of Janvey at the bottom of the next page, which is the most expedient and pertinent citation from the Fifth Circuit Court opinion that sums up most of the above. Note; Van Tassel in the below citation was the CPA that was hired by Receiver Janvey.

<u>The Fraudulent Transfers In This Case Were Not Filed Within One Year From the</u>
<u>Time They Accrued and Are Thus Time Barred by OCGA 18-2-79(1)</u>

As specifically plead by Receiver Nohr at item 4 "within the four corners of the Complaint" in this case, "*On November 28 and 29, 2012, Receivership Defendants Alexander and McClintock consented to the entry of permanent injunctions against them, admitted that they operated a fraudulent Ponzi-scheme, and settled the SEC's allegations against them in the Receivership Court (except as to the amount of disgorgement, which is to be determined at a later date).*

According to Defendant Day's calculations, 636 days passed from November 28, 2012 to the date the Complaint was filed on August 26, 2014.

---

(1) "*It was not until August 27, 2009 that Davis pleaded guilty to federal securities-, mail-, and wire-fraud offenses and in connection therewith disclosed facts indicating the true nature and duration of Stanford's operation of a massive Ponzi scheme. The Receiver filed this suit on February 19, 2010, less than one year after Davis's guilty plea. There is no evidence in the record to indicate that the Receiver or Van Tassel had developed or could reasonably have developed knowledge or probative evidence of the true nature and duration of the Ponzi scheme prior to Davis's guilty plea on August 27, 2009. To be specific, the Committees have not introduced any evidence that tends to show that the Receiver \*198 knew or could reasonably have known about the true nature and duration of the Ponzi scheme for more than one year prior to the Receiver's filing of this suit on February 19, 2010 or that the Receiver and Van Tassel did not search diligently to uncover evidence and knowledge of the Ponzi scheme and its link to the donations made to the Committees. Therefore, the district court's denial of the Committees' motions for dismissal and summary judgment will be affirmed*".

However, this amount of days must be adjusted (reduced) pursuant to this Court's tolling of any and all relevant statutes of limitations as to third party claims, as called for at par. 34 of its "Order Appointing Receiver", which was entered on February 11, 2013 in the Receivership Court.  Note; Defendant Day only discovered that specific tolling of the limitations part of the Order @ par. 34, pursuant to Receiver Nohr's evocation of it at the bottom of page 9 in his Response.

Paragraph 34 of that Order states;  "*All ancillary proceedings are stayed in their entirety, and all courts having any jurisdiction thereof, are enjoined from taking or permitting any action until further Order from this Court.  Further, as to a cause of action accrued or accruing in favor of one or more of the receivership Defendants against a third person or party, <u>any applicable statute of limitations is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action</u>*".

The date of the above Order was February 11, 2013 and the Court approved Receiver Nohr's third party claims on September 11, 2013, which according to Defendant Day's calculations, the injunction period for limitations purposes then pursuant to the above Order by the Court, was/is 211 days.

Thus, the aforementioned period from the time of the accrual of the Fraudulent Transfer claims to the time of the filing of the Complaint of 636 days,

less 211 days for the aforementioned injunction period as ordered by this Court, is 425 days, and thus, well over and beyond the controlling one year time limitation for Receiver Nohr to have filed his Fraudulent Transfer claims, not only against Defendant Day, but ALL Defendants in this case, as well.

To continue, Defendant Day re-iterates how, throughout his Response, Receiver Nohr claims and/or implies that any and all claims he may ever have or bring against any party on behalf of the Receivership Defendants, could only have accrued as of either the time he was appointed as receiver on February 11, 2013, or as of the time this Court approved his third party claims on September 11, 2013. This could not be further from the truth and is a critical issue in this case since, as above, the Fraudulent Transfer claims in this case accrued BEFORE Receiver Nohr was appointed as receiver.

For one thing, what about a hypothetical claim on a 25 year old contract with a breach which would have occurred 5 years after the contract, that would be governed by a standard 4 years time limitation (with no tolling of the time limitations period called for)? The time of the breach 5 years after the contract absolutely would have been the time that the claim would have accrued for any interested party and there is simply no way any receiver would have any right to bring a claim for the same due to any interpretation of the law on limitations. To do so would impute a totally unfair legal immunity upon any receiver.

The same goes for any claim that is governed by a statute that contains a tolling of time provision (such as 18-2-79(1)) until the fraud (transfers in this case) are discovered or reasonably could have been discovered. There is an absolute accrual of such a claim, which in this case was November 28, 2012, that can not be based on the appointment of a receiver under any interpretation of the law. Receiver Nohr may not have been able to bring his Fraudulent Transfers claim in this case until his appointment (and thus until the approval of his third party claims pursuant to the aforementioned injunction), but so too would he not have been able to bring his claims in the aforementioned scenario that accrued 20 years before, until his appointment. The principal is the same. Receiver Nohr had the power to bring claims against third parties that either would have accrued AFTER his appointment, OR, those that had accrued BEFORE his appointment, so long as he abided by the relevant statute of limitations, which in this case, he did not.

Last and certainly not least in regards to this issue as to accrual prior to a receiver's appointment, even this Court recognizes that a claim (cause of action) for Receiver Nohr in fact, could have accrued prior to his February 11, 2013 appointment as it states at par. 34 of its "Order Appointing Receiver" "*Further, as to a cause of action __accrued__ or accruing in favor of one or more of the receivership Defendants against a third person or party, any applicable statute of limitations is tolled during the period in which this injunction against*

*commencement of legal proceedings is in effect as to that cause of action*".

In conclusion to this section, it is certain that Receiver Nohr knew of, or should have known of, the existence of transfers from the Receivership Entities in this case to outsiders AND their "Fraudulent Nature" as of the date they accrued on November 28, 2012, by way of admission of guilt by the Receivership Defendants.

Moreover, Receiver Nohr could have easily filed his Complaint on or before November 27, 2013, which would have been after this Court approved his third party claims, and which would have been within one year from the time Fraudulent Transfer claims accrued on November 28, 2012. Or, he could even have done so within 211 days thereafter, pursuant to this Court's aforementioned injunction, which, according to Defendant Day's calculations, would have been on or before June 26, 2014. But he did not. Instead, Receiver Nohr did not file the Complaint until August 26, 2014, and thus, has failed to comply with the provisions of the discovery part of OCGA 18-2-79(1), in its entirety.

Accordingly, this Court should grant that part of Defendant Day's Motion to Dismiss in regards to Count 1 for Fraudulent Transfers against her, thereby dismissing those claims against her.

**Count 2 Against Defendant Day is Barred by the Statute of Limitations;**

At pages 11 thru 13 of her Brief in Support of her Motion to Dismiss ("Brief") Defendant Day presents her defense that Receiver Nohr's Unjust

Enrichment claim in Count 2 is barred by the four year time limitation pursuant to OCGA 9-3-32 and Receiver Nohr responds by claiming at page 13 of his Response that it is the four year limitation pursuant to OCGA 9-3-26 that governs his Unjust Enrichment claim, which Defendant Day concurs with.

Defendant Day will not argue any further this issue however, and simply relies on her time limitation defense (other than the relevant statute) as to the Unjust Enrichment claims against her, as argued at pages 11 thru 13 of her Brief.

However, Defendant Day believes this time limitation defense is moot in any event (although she still relies on it) since nowhere in Receiver Nohr's Response did he argue or present any opposition whatsoever as to her "Adequate Remedy at Law" defense in relation to the subject Unjust Enrichment claim in Count 2, which terminates that count in any event, as indicated in the next section.

## Count 2 is Also Barred Against Defendant Day Since There Was/Is An Adequate Remedy at Law for Receiver Nohr;

As above, in his Response, Receiver Nohr did not argue, oppose or even address or mention in any manner anything about Defendant Day's claim and argument at pages 13 thru 18 in her Brief that the Unjust Enrichment claim against her is barred since their was/is an "Adequate Remedy at Law" for Receiver Nohr.

Accordingly, without any further adieu, since there is no opposition to this "Adequate Remedy" issue by Receiver Nohr, this Court should immediately grant

that part of Defendant Day's Motion, thereby dismissing Count 2 against her.

## Count 2 is Also Barred Against Defendant Day Since There Was a Legal Contract Between the Parties;

Defendant Day relies on her argument at pages 18 thru 20 in her Brief as to Count 2 being barred because there was a contract between the parties and as with her time limitations defense for Count 2 as shown just above, Defendant Day believes this defense as to a contract between the parties is moot in any event (although she still relies on it) since Receiver Nohr presented no defense or opposition to the "Adequate Remedy at Law" issue in his Response.

## CONCLUSION

For all the foregoing reasons, Receiver Nohr's Fraudulent Transfers claims in Count 1 and Unjust Enrichment claim in Count 2 against Defendant Day are invalid, and her Motion to Dismiss thus, should be granted by this Court, thereby dismissing all claims against her.

Respectfully Submitted This _19th_ Day of November, 2014

Norma Day
Room 212
2899 Five Forks Trickum Rd.
Lawrenceville, Ga.  30044

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**Plaintiff**

**JASON L. NOHR, Receiver for**     **CASE# 1:14-cv-02761-SCJ**
**MSC HOLDINGS USA, LLC,**
**MSC HOLDINGS, INC., and MSC**
**HOLDINGS, LLC**


**Defendants**

**NORMA DAY, PRO SE, et al**     **Jury Trial Requested**
     **On Any Issue of Fact**

## CERTIFICATE OF SERVICE

I hereby certify that I have, this day, served a copy of the foregoing; "Defendant Norma Day's Reply to Plaintiff Receiver Nohr's Response to Her Motion to Dismiss", upon opposing counsel, pursuant to this Court's local rule 5.2(1), by depositing in the United States Mail, ie., via First Class Mail, a copy of the aforementioned document, with adequate postage affixed thereon, addressed as follows;

James L. Nohr, Esq.
Cauthorn, Nohr & Owen
212 Church St.
Marietta, Ga. 30060

This the 19th day of November, 2014

Norma Day
Room 212
2899 Five Forks Trickum Rd.
Lawrenceville, Ga. 30044